THE McANDREWS & FORBES COMPANY, appellant,

*v.*

CITY OF CAMDEN, respondent.

[Argued June 24th, 1910.    Decided November 30th, 1910.]

1. The jurisdiction conferred by the act of 1870 (*Gen. Stat. p. 3486*) upon the court of chancery, to settle disputed titles to land by a suit brought for the purpose by the party in possession, is simply an extension of its function of entertaining bills *quia timet.* For this reason when an issue at law has been directed in such suit and the verdict rendered thereon is attacked the court of chancery should follow the same practice which prevails when a similar situation arises in proceedings under a bill *quia timet;* viz., consider, among other things, alleged trial errors in order to determine whether the erroneous rulings (if they appear) are such as to destroy the value of the verdict as a means of satisfying the conscience of the chancellor.

2. On an appeal from an order of the court of chancery denying a new trial of an issue at law, on a bill filed to quiet title, under the act of 1870, the question for determination is, whether a new trial was properly refused, and not whether the reasons given by the court for denying it were sound.

3. Conveyances of lots by reference to a map made by the vendor, and publicly exhibited in the office of his sales agent, describing them as bounding on a designated street, shown on the map, constitute a dedication to public use of that street as laid out thereon.

4. When a street has once been dedicated, the right of the public to appropriate it to their use at any time when their wants or convenience require it cannot be defeated or impaired by any subsequent act of the dedicator or of those claiming under him.

5. A street delineated on a dedicating map as extending to a public navigable river will be continued to the new water front obtained by filling in by the owner under legislative sanction.

6. Where the public rights in a dedicated street have been extinguished by a grant from the state to the dedicator or his grantees, a rededication of the street to public use is created by the subsequent making of conveyances, by the state's grantee, by reference to the original dedicating map and describing the property conveyed as bounding upon that street.

On appeal from an order of the court of chancery advised by Vice-Chancellor Walker, denying a new trial on an issue at law in proceedings had under "An act to compel the determination of claims to real estate in certain cases, and to quiet the title to the same." *3 Gen. Stat. p. 3486.*

*Mr. Edwin G. C. Bleakly,* for the appellant.

*Mr. Sherred Depue,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The McAndrews & Forbes Company, the respondent herein, filed their bill to quiet the title to a tract of land in the city of Camden bordering upon the Delaware river. The fee of the land is vested in them, but the municipal authorities claim that one of the public streets of the city, known as Jefferson street, extends across it to the present water line of the river. The purpose of the litigation is to determine the validity of this claim.

The bill is filed under the act of 1870 (*Gen. Stat. p. 3486*), which provides a suit in chancery as a means whereby a person in peaceable possession of land in this state, and claiming to own the same, but whose title thereto is disputed, or whose estate therein is alleged to be subject to some lien or encumbrance, may have his title settled, or the validity of the alleged lien or encumbrance determined, when no action has been brought against him for this purpose. The defendants having filed their answer to the bill asserting the existence of their alleged easement, and the complainants having filed their replication thereto, the court of chancery directed an issue at law to be framed in the supreme court to try the validity of the city's claim. Such an issue was thereupon framed and tried in the court designated, with the result that the validity of the claim was negatived by the verdict of the jury. Application was thereupon made by the city to the court of chancery to direct a new trial of the issue upon the ground that

the verdict was against the evidence, and also because of trial errors asserted to have been committed by the law court. The vice-chancellor, to whom the cause had been referred, denied the application, stating that so far as the facts were concerned he concurred in the finding of the jury, and that so far as pure questions of law were concerned, they should be left to the law court to which the issue was sent.

The view of the learned vice-chancellor that it was not the function of the court of chancery, in deciding the application for a new trial, to pass upon alleged legal errors committed by the trial court was, we think, unsound. The fifth section of the act of 1870, which deals with the matter of issues at law, provides that the court of chancery shall be bound by the result of such issue, but may, for sufficient reasons, order a new trial thereof according to the practice in such cases. The jurisdiction conferred upon the court of chancery by the statute is merely an extension of its function of entertaining bills *quia timet* to remove clouds from the title of persons in possession of real property. *Brady* v. *Carteret Realty Co.,* *70 N. J. Eq. (4 Robb.)* *751.* The ordinary practice of the court on such bills, when an issue at law had been directed, and the verdict rendered thereon was attacked, was to consider alleged trial errors as well as the evidence reported to it by the law court, for the purpose of determining whether the erroneous rulings (if they appeared) were such as to destroy the value of the verdict as a means of satisfying the conscience of the chancellor. *Basset* v. *Johnson, 2 N. J. Eq. (1 Gr. Ch.) 154; .Trenton Banking Co.* v. *Rossell, 2 N. J. Eq. (1 Gr. Ch.) 512; Newark Plank Road Co.* v. *Elmer, 9 N. J. Eq. (1 Stock.) 785; Black* v. *Lamb, 12 N. J. Eq. (1 Beas.) 108.* The act of 1870 being merely an extension of this jurisdiction, requires that the same practice should prevail under it; and this was the view taken in the celebrated case of *American Dock and Improvement Co.* v. *Trustees of Public Schools, 39 N. J. Eq. (12 Stew.) 409,* in which the chancellor considered and passed upon numerous errors alleged to have been committed by the law court during the trial of the issue which he had sent to it for determination.

But although this appeal raises questions of law which were not considered and determined by the court of chancery, we are not, on this account, debarred from considering them, for the real matter to be determined by this court is whether the order for a new trial was properly refused, not whether the reasons which moved the court to its decision were sound or otherwise. We therefore take up the consideration of the merits of the controversy between the parties.

On September 3d, 1874, the Manufacturers Land and Improvement Company became seized in fee of a tract of land in the city of Camden, containing about two hundred acres and bordering on the Delaware river. Shortly after acquiring this tract, and on December 28th, 1874, the company obtained from the riparian commissioners a lease for the land under water in front of a portion of the tract, and extending to the exterior wharf line theretofore established by the commissioners; with authority to exclude the tidewater therefrom by filling in or otherwise improving it, and to appropriate the same to its exclusive private use. On June 30th, 1877, the company acquired a further lease from the commissioners for the land under water in front of the remaining part of the tract also extending to the exterior wharf line above referred to, and with similar authority as to filling in and otherwise improving the tract.

In the latter part of the year 1874, or in the early part of 1875, the company laid out the tract of upland into streets and lots, and caused a map thereof to be made. Among the streets shown upon the map was Jefferson street, and it was delineated thereon as running to the water's edge of the Delaware river. Subsequently, the company employed one John Dobbins, a real estate agent in the city of Camden, to make sale for it of these lots. The map was exhibited in Dobbins's office; and between the years 1875 and 1884 numerous lots and blocks were sold and conveyed by the company by a reference to this map, and bounded on the streets delineated on it. In the latter year four entire blocks, each containing forty lots, and a portion of another block, containing fifteen lots, were sold and conveyed by the company to one Zephan C. Howell. Two of these blocks, and the part of the block

containing fifteen lots, are described in the deed of conveyance as bounding on Jefferson street. The conveyance of these lots by reference to the map which had been publicly exhibited in the office of Dobbins, the company's sales agent, constituted a dedication to the public use of Jefferson street as laid out upon that map—that is, to the high-water line of the Delaware river as it existed at that time. *Pope* v. *Town of Union, 18 N. J. Eq. (3 C. E. Gr.) 282; State, Central Railroad Co.* v. *Elizabeth, 37 N. J. Law (8 Vr.) 432; Clark* v. *Elizabeth, 37 N. J. Law (8 Vr.) 120; S. C. on error, 40 N. J. Law (11 Vr.) 172, 174.* The public right to appropriate the street thus dedicated, at any time when their wants or convenience required it, could not be defeated or impaired by any subsequent act of the dedicator, or those claiming under it. The land could only be released from the public servitude by the state itself. *South Amboy* v. *New York and Long Branch Railroad Co., 66 N. J. Law (37 Vr.) 623.*

In the years 1886 and 1887 the company sold and conveyed to the Keystone Chemical Company and to the Asphalt Block Company two parcels of land (one to each grantee) made up in part of the original two-hundred-acre tract, and in part of the land under water leased to it by the state. These two parcels, by a series of mesne conveyances, became vested in the present respondent, the McAndrews & Forbes Company, and embrace the *locus in quo.*

Some time prior to the year 1885, but just when the case does not disclose, the Manufacturers Land and Improvement Company began filling in the land under water leased to it by the state. After it had conveyed the *locus in quo* to the chemical company and to the asphalt company the filling in was continued by these grantees, and by subsequent owners, to such an extent that the high-water line in front of Jefferson street was shifted considerably nearer to the original centre line of the river. The claim of the city is that the effect of this filling in was to extend Jefferson street as originally dedicated to the new high-water line of the river.

In our opinion the city's claim is well founded. It is settled in this state that a street delineated on a dedicating map as ex-

tending to a public navigable river (and the Delaware opposite Camden is such a river) will be continued to the new water front obtained by filling in by the owner under legislative permission. *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken, 36 N. J. Law* (7 Vr.) *540; Seabright* v. *Allgor, 69 N. J. Law* (40 Vr.) *641.* It is contended on behalf of the respondent that the leases made by the riparian commissioners operated to extinguish the public easement so far as the reclaimed land is concerned; and *City of Hoboken* v. *Pennsylvania Railroad Co., 124 U. S. 656,* is relied upon to support this contention. It is true that, by force of that decision, a grant made by the state subsequent to the dedication of the land over which the street would be continued, if sufficiently broad in its terms, will extinguish the public easement over such land when reclaimed. In disposing of this contention, it may be conceded that the two leases made by the riparian commissioners contain words apt for that purpose, and that the commissioners were empowered by the state to extinguish such public easements by instruments of that character (an important question, the decision of which is not required by this case) ; but many of the conveyances by force of which Jefferson street was dedicated to public use were executed subsequent to the making of the second of these leases, and so, even if the original dedication preceded the state's grants, and was, consequently, extinguished thereby, the subsequent conveyances operated to rededicate the street to public use, not only over the original tract delineated upon the Manufacturers Land and Improvement Company's map, but also over the lands which it had then acquired through the state's grant. *Seabright* v. *Allgor, supra.*

In the years 1886 and 1891 the leases of 1874 and 1877, so far as they covered the *locus in quo,* were attempted to be converted into grants by deeds of conveyance duly executed by the riparian commissioners. This was done at the request of the lessees. In the year 1900, a further conveyance of said lands was executed by the commissioners, the purpose of which was to correct an error contained in the description of the land in the one or the other of the earlier deeds, and thus confirm the title to the lands in-

tended to be conveyed by them. These conveyances by the commissioners, however, do not operate to extinguish the public easement over the lands conveyed, for, both in that of 1886 and in that of 1891, it is expressly provided that the grant is made subject to the rights of the public, if any exist, to all easements or rights of way over the lands conveyed; and that of 1900, as has been stated, merely confirms the right, title and interest of the grantees in the lands intended to be conveyed by those of 1886 and 1891.

We conclude, therefore, that the verdict on the trial of the issue at law was contrary to the evidence. This being so, the errors alleged to have been committtd by the law court at that trial became immaterial, except .so far as they were based upon a theory of the law antagonistic to the views which we have expressed, and therefore have not received consideration from us.

For the reasons indicated, the application to the court of chancery to direct a new trial should have prevailed, and the order under review must be reversed.

*For affirmance*—VOORHEES—1.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, CONGDON—10.