CITY OF CAMDEN, PLAINTIFF IN ERROR, v. McANDREWS & FORBES COMPANY, DEFENDANT IN ERROR.

Argued June 19, 1913—Decided November 17, 1913.

1. The making and use by a landowner of a sales map or plat of his land showing lots, blocks and streets, and the conveyance of lands by reference thereto, constitute a dedication to public use of the streets delineated thereon so far as the ownership extended at the time the map was made, but not of streets lying wholly outside the owned tract, though the land be subsequently acquired, unless there be some further act evidencing an intent to dedicate streets traversing such after-acquired property.

2. The description in a deed of property conveyed as bounding on a street without referring to any map and without any other ascertainment of the length of such street, operates as a dedication of the street no further beyond the frontage of the tract conveyed than it is actually open at the time of delivery of the deed.

3. Reference in a deed to the grantor's sales map and also to the official city map, construed as intended simply to fix the location on the city map of the lots and blocks shown on the sales map.

4. When a reference in a deed to streets on a public plat is manifestly for purposes of location only, it does not operate as a dedication of other streets shown on the plat but not mentioned in the deed.

5. The acceptance by a grantee of a deed referring to the property conveyed· as lying in a street, operated as conclusive evidence of an assent by said grantee to the devotion of that property to street uses.

6. Where the action of a trial court in granting a nonsuit is duly presented as ground for reversal, the fact that an element in the case justifying a recovery was not specifically called to the attention of the trial judge, will not save the error in granting the nonsuit.

7. Under Supreme Court rules 131 and 147 of 1913 if a judgment in ejectment is right as to part of the premises claimed and erroneous as to the remainder, it will be reversed only as to the part with respect to which there was error.

On error to the Camden County Circuit Court.

For the plaintiff in error, *Edwin G. C. Bleakly.*

For the defendant in error, *Lewis Starr.*

The opinion of the court was delivered by

PARKER, J. This is an ejectment by the city for the purpose of subjecting and opening to public use as part of a street, a strip of land twenty feet wide and about five hundred feet long, running approximately east and west, lying between the centre and southerly lines of Winslow street as laid down on the city map, or the productions of those lines; terminating on the west in a so-called "private street" on filled land beyond original high-water mark in the Delaware river, and bounded on the east end by a railroad curve which crosses the southwesterly corner of Winslow and Third streets. The city claimed title by dedication, and the appeal is from a nonsuit directed by the trial judge. The original high-water line ran approximately north and south, at a distance of about three hundred and fifty feet west of Third street and substantially parallel therewith. As respects the part of the described premises lying beyond such high-water line the claim is that Winslow street was dedicated to high-water line, and the subsequent filling in under riparian grants or other authority carried the street to the new line of high water, under the rule laid down in *Hoboken Land and Improvement Co. v. Hoboken, 7 Vroom* 540. It was denied by the defendant that any dedication to the original high-

water line had been shown, or indeed any dedication of Winslow street west of Third street; and the judge by his action sustained this position.

The claim of dedication rests on two maps and a number of deeds, most of them referring to one or the other map or to both. The first map is the official map known as the Yocum map of 1874. This shows Winslow street according to the projected city plan as extending from Eighth street to the river, a distance of about two-thirds of a mile. The irregular line apparently intended for high-water line seems to be double at the end of Winslow street, and there was some argument about the meaning and effect of this; but for reasons that will appear, we find this point unnecessary to discuss. The other map is the property map of the Manu-facturers' Land and Improvement Company, made also about 1874, and used by that company in making its sales. It will be hereafter referred to as the land company map. From this map and other evidence it appears, and is not disputed, that at the time it was made, the land company did not own any part of the property in question, or the land on either side of Winslow street further west than Broadway, four squares to the eastward of Third street, but between Broadway and the river its northerly boundary was a line parallel with and twenty feet south of the southerly line of Winslow street as plotted. It is also material· to note that Winslow street on this map does not run as far east as Eighth street, but stops at Broadway; that its westerly end and those of neighboring streets to the north are not tied up to any monument, but left indefinite and in the air, and that the high-water line is carried from Newton creek, about a mile to the south, up to the north boundary of the company's property (viz., the line twenty feet south of Winslow street) but not beyond that line, and consequently there is no indication from the map itself of the connection of Winslow street with high-water mark. Although the defendant derived its title to the prem-ises claimed through the land company, said premises are not shown on this map as the property of that company, and

as already stated were not its property at the time the map was made, but were conveyed to it by one Howell and wife in 1877, some two or three years later. The company made various conveyances referring to this map both by names of the streets and by block and lot numbers. The rule is of course too well settled to admit of question, that the use of such a map as a sales map, and reference to it in the deeds and the description therein of lots as bounded on a designated street, constituted a dedication to public use of the street as laid out thereon. *Clark* v. *Elizabeth,* 11 *Vroom* 172. This court has so held with reference to the very tract plotted on this land company map, in a litigation between the same parties but as to a different part of the tract. *McAndrews & Forbes Co.* v. *Camden,* 8 *Buch.* 244. But that decision related to Jefferson street, the next street to the south of Winslow street, and which was within the tract owned by the company when the map was made, and running between and through lots exhibited for sale. The present case is different, and in the aspect now under examination presents the question whether the delineation on the map of a street which does not traverse or bound any of the owned property, coupled with sales of property by reference to such map but bounding on other streets, operates as a dedication of the first-mentioned street. We are clearly of opinion that it does not. Naturally an owner cannot dedicate streets over land that he does not own, and as Winslow street from end to end was located on alien territory, the delineation of it on the map could answer no purpose except that of location and to notify customers that such an actual or proposed street lay in a certain position with reference to the tract. There is no express recognition of Winslow street in any of the company's deeds except as hereinafter stated.

Nor did the subsequent extension by the company of its ownership north of the boundary line above described, and including the land within the lines of Winslow street, confer any efficacy on the map and deeds based thereon by way of dedication, so far as Winslow street was not mentioned in

such deeds. The *status* was fixed by the map as made and the ownership at that time, and while there was nothing to prevent the land company from recognizing and dedicating Winslow street at or after the time of acquiring the land covered by it, it would be extending the doctrine of dedication to an unwarranted length to hold that the mere acquisition of that territory without more, would relate back to the date of the map and create a dedication of land not then owned and whose purchase for all that appears was not even contemplated.

On this branch of the case, then, we conclude that the land company's map and deeds based thereon had no effect by way of dedicating Winslow street.

The next point for consideration relates to the effect of deeds bounding the property therein conveyed on Winslow street without reference to any map. There are three such deeds, one to West in 1881 of property bounded by Winslow, Jefferson and Fourth streets and Broadway. As between the parties this is plainly a dedication of Winslow street in front of the premises conveyed, and doubtless as far as the nearest cross street. In *Clark* v. *Elizabeth, supra,* there was express reference to the city plat, and this supported a dedication of the street as appearing on that plat. In fact almost all of the reported cases are based on either the promulgation of a layout of lots by the owner or his adoption of an official plat. In the case of a mere reference to a street as fronting the property conveyed, there being no map or plat referred to, it would be impracticable to extend the dedication beyond the length of that street as actually open at the time of the conveyance, and it is undisputed in this case that Winslow street was not open to the west of Third street. So the deed to West has no bearing in the case at bar. The same is true of the deed to Comey in 1885 of premises on the northwest corner of Broadway and Winslow street, and the deed to the Atlantic City Railroad Company in 1890 of land at the southeast corner of Third and Winslow streets.

There are two or three deeds by the land company of premises bounded on other streets more or less remote, and

with reference to the land company's map. These are of course inoperative as to Winslow street, for reasons already given.

Two deeds refer to both maps. They are made by the land company to Zophar C. Howell, and the second is confirmatory of the first. Several tracts are included but none bounds on Winslow street nor is that street mentioned, and the evident intent of the references to the city map is to superpose the land company's map on it and thus indicate a coincidence of streets laid on both maps. The result is thus to limit the adoption of the city map to so much thereof as is plotted on the land company's map, the descriptions being by lot and block numbers on the latter's map.

One deed refers entirely to the city map. The premises are bounded by Jefferson street on the south, Viola street on the north, railroad property on the east, and a line parallel with and one hundred feet east of Sixth street on the west. There is no mention of Winslow street, and this is especially significant because Winslow street on the city map runs directly across the middle of the premises conveyed by this deed. Under these circumstances it is plain that the reference to the city plan is for purposes of location only and that no dedication of Winslow street was intended or could result.

We find, then, nothing in the map or deeds of the land company as introduced in evidence to indicate a dedication of Winslow street, and were there nothing else in the case, the nonsuit would be entirely justified. But we do find evidence of such dedication in a deed to the land company conveying the tract in question as part of a larger tract, and such dedication affecting the easterly part of the premises claimed. This deed is from Zophar C. Howell to the Manufacturers' Land and Improvement Company in 1877. The first tract begins in the north line of the mapped tract, twenty feet more or less south of Winslow street, and two hundred feet west of Third street, and runs westerly along the company's line to the river, then northerly seventeen hundred feet, then easterly to a line two hundred feet west of Third street and southerly along that line to the beginning. The second

tract begins as before and runs easterly along the company's north line eleven hundred and sixty feet to the middle of Broadway; then northerly thirty-five feet more or less to the middle of Winslow street; thence westerly along the middle of Winslow street eleven hundred and sixty feet more or less to a point two hundred feet west of Third street, and southerly thirty-five feet to the beginning.

This appears to be an out and out recognition of Winslow street from Third street to a point two hundred feet west of the westerly line thereof. True, the deed was not made by the land company as grantor, but it was accepted by it as grantee, and that acceptance operated as an assent by the grantee to the devotion of the land to any public uses defined in or arising from the language of the deed. *Mayor, &c., of Jersey City* v. *Morris Canal Co.,* 1 *Beas.* 547; *New Jersey, &c., Railroad Co.* v. *Drummond,* 16 *Vroom* 511; *affirmed,* 17 *Id.* 644; *Central Railroad Co.* v. *Elizabeth,* 8 *Id.* 432. The land company could convey no more than it took; and if it took subject to a dedication which might be accepted by the city at any time in the future such acceptance is inferred from the bringing of this ejectment suit. *Atlantic City* v. *Groff,* 35 *Id.* 527.

It was error, therefore, to nonsuit as to the entire tract claimed, for plaintiff may recover part if he fail to show his right to all. Ejectment act (*Comp. Stat., p.* 2062), § 41.

It is intimated that this dedication of the easterly part of the premises by virtue of the Howell deed was not called to the attention of the trial court as an obstacle to a nonsuit; but assuming this, if there was in the case any element on which the plaintiff could base a legal claim to recovery in whole or part of the lands claimed, then unless such element was plainly waived it was the duty of the court to take notice of it, and a nonsuit was error. In *Philadelphia Brewing Co.* v. *McOwen,* 47 *Vroom* 636, 638, both sides moved for a direction, and it was said by this court that if there was error in either the denial of the defendant's motion or the granting of that of the plaintiff, the defendant could avail himself thereof. In *Bower* v. *Bower,* 49 *Id.* 387, 390, the

disposition of the case by a directed verdict was held to involve the determination of a disputed fact, and though both sides overlooked or ignored this dispute on the trial and presented the issue as one of law only, this court held that an exception to the direction duly assigned for error by the party prejudiced, must lead to a reversal. A similar result must follow in the present case.

The question remains whether dedication of this easterly portion conclusively appeared, so that the trial court should have directed a verdict in favor of the plaintiff for that part, or was merely a question for the jury. The language of a deed may be such that a jury question is raised, as in *Atlantic City* v. *Groff,* 39 *Vroom* 670, where the deed spoke of "the intended New York Avenue line." So, if it be clear that the street is merely mentioned as a landmark, there is no dedication. *Meredith* v. *Sayre,* 5 *Stew. Eq.* 557. On the other hand, the recognition in a deed of the existence of a street in a deed is sometimes conclusive. In was so held by this court in *Central Railroad* v. *Elizabeth,* 8 *Vroom* 432, where the deed said the description embraced portions of certain streets, "which portions are conveyed subject to being and remaining public highways until vacated by lawful authority." In *Clark* v. *Elizabeth, supra,* the owner made deeds by reference to the city map, and it was held by this court that his deed was conclusive evidence of dedication, and that parol evidence of an intent not to dedicate was not competent.

The question of dedication being mainly one of intent, its determination is ordinarily for the jury. 13 *Cyc.* 485. But if the intent is plain from the language of a deed not denied to be the deed of the owner, there is no call for the intervention of a jury. In the case at bar the description shows the land conveyed to lie within the lines of a street called Winslow street. The recognition of the street is consequently as plain as if a map had been referred to, and we deem *Clark v. Elizabeth* to be controlling. As to the part of the premises east of the two hundred foot line a verdict should have been directed for the plaintiff.

This result calls into operation Supreme Court rules 131 and 147 of the revised rules of June Term, 1913, rule 131 being rule 72 appended to the Practice act of 1912 and having been made applicable by rule 147 to appeals as well as to motions for new trial, and by section 29 of the act, applicable to this court. It provides that in case a new trial is granted it shall only be a new trial of the question or questions with respect to which the verdict or decision is wrong, if separable. In *Moersdorf* v. *New York Telephone Co.*, 55 *Vroom* 747, the rule was applied to a difference in the rule of liability as respecting different parties. Here there is a difference in the facts applicable to two parts of the premises claimed, resulting in a right of recovery of one part and not of the other. So far as relates to the portion west of the two hundred foot line the judgment brought up will be affirmed; as to the portion east of that line it will be reversed to the end that a *venire de novo* be awarded.

*For affirmance*—None.

*For reversal*—The Chief Justice, Garrison, Swayze, Trenchard, Parker, Minturn, Kalisch, Vredenburgh, Congdon, White, Terhune, Heppenheimer, JJ. 12.