· CITY OF CAMDEN v. ARMSTRONG CORK CO.

(Circuit Court of Appeals, Third Circuit. December 31, 1913.)

No. 1728 Oct. Term, 1913.

1. DEDICATION (§ 45*)—INTENT TO DEDICATE—QUESTIONS FOR JURY.
    Dedication is a question of intent, and if such intention is unequivocally manifested by the dedicatory instrument, the court so holds, but if it is ambiguous, dedication is an inference to be drawn by a jury from all the facts and circumstances of the case.
    [Ed. Note.—For other cases, see Dedication, Cent. Dig. § 88; Dec. Dig. § 45.*]

2. APPEAL AND ERROR (§ 866*)—SCOPE OF REVIEW—EFFECT OF BOTH PARTIES ASKING DIRECTED VERDICT.
    Where both parties ask for a directed verdict, and the facts are thus submitted to the court, an appellate court is limited in reviewing its action to a consideration of the correctness of the findings on the law, and must affirm if there be any evidence in support thereof.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3467–3475; Dec. Dig. § 866.*]

3. DEDICATION (§ 44*)—EVIDENCE OF DEDICATION—MAPS.
    Maps, by which the owners platted lands into blocks and streets and subsequent deeds, considered, and held not to have effected a dedication as an extension of a street of land then submerged and lying between high and low water mark, the title to which was in the state, but to which the maker of the map had the right to, and subsequently did, acquire title, under a law of the state, by filling the same; no extension of the street over such land being shown on the maps.
    [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. § 44.*]

4. APPEAL AND ERROR (§ 756*)—BRIEFS.
    Under the practice in Pennsylvania the brief must contain a concise abstract presenting the questions involved in the order in which they are raised.
    · [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3091; Dec. Dig. § 756.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action at law by the City of Camden against the Armstrong Cork Company. Judgment for defendant, and plaintiff brings error. Affirmed.

The following is the Mickle map referred to in the opinion:

E. G. C. Bleakly, of Camden, N. J., for plaintiff in error.

Grey & Archer, of Camden, N. J., and Gordon & Smith, of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, the city of Camden, N. J., brought an action of ejectment against the Armstrong Cork Company, a corporation of Pennsylvania. The suit concerns a strip of land in Camden 820 feet in length and 33 in breadth, which the city alleges was dedicated by the owners thereof to public use as an extension of Winslow street. The locus in quo was originally submerged bottom land, lying between high and low water marks on the Delaware river. It was subsequently filled by the abutting upland own-

ers, and thereafter by sundry mesne conveyances vested in defendant. No street has ever been opened over the ground, and it has been used by defendant as part of its inclosed factory premises, some buildings in fact being located thereon.

[1] Under the proofs the case turned on the issue of dedication, and dedication, as is well settled (Irwin v. Dixion, 9 How. [50 U. S.] 30, 13 L. Ed. 25), is a question of intent. If such intention is unequivocally manifested by the dedicatory instrument, the court so holds: Elliott on Streets (3d Ed.) vol. 1, § 131; but if it is ambiguous, dedication is an inference to be drawn by a jury from all the facts and circumstances of the case: Atlantic City v. Groff, 68 N. J. Law, 670, 54 Atl. 800; Wood v. Hurd, 34 N. J. Law, 87.

[2] In this case the proofs consisted of maps, deeds, and oral testimony, and at the close of the case both sides asked for binding instructions. Thereupon the court directed a verdict for defendant. On entry of judgment this writ was sued out. The only two errors now urged are the refusal of plaintiff's, and the grant of defendant's, requests for directions. Both parties having asked for binding instructions, and the facts having been thus submitted to the court, we are limited in reviewing its action to the consideration of the correctness of the findings on the law, and must affirm, if there be any evidence in support thereof. Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654.

[3] As the case turns on the question of an intent to dedicate, it follows that if these proofs disclose evidence from which the intention not to dedicate—which the court found—could be inferred, its judgment will not be disturbed. In other words, both parties having united in calling on the court to decide the whole case, its judgment should stand, if there was substantial evidence on which to rest.

[4] Pursuant to our rule requiring "a concise abstract, or statement of the case, presenting succinctly the questions involved," the plaintiff thus summarizes the question before us:

"Although the defendant may claim to have a good paper or record title to the land in dispute, it is contended by the plaintiff that the defendant acquired title to said lands subject to the easement of the public in Winslow street as a highway by reason of certain dedications. These alleged dedications are based mainly on the construction of three different maps, known, respectively, as the Mickle map, Exhibit P 15, the Manufacturers' Land & Improvement Company map, known as the Bourquin plan, Exhibit P 14, and Camden's Official Map, Exhibit P 16."

Turning first to the Mickle map, the pertinent part of the littoral portion of which is here reproduced, we note that Isaac Mickle, when he made this map in 1872, owned the tract of land abutting the Delaware river, which he laid out in lots and streets plotted thereon. Fronting said upland, and lying between high and low water marks, was a flat or meadow containing some 24 acres. In view of the New Jersey decisions (Gough v. Bell, 22 N. J. Law, 441, Stevens v. Patterson, 34 N. J. Law, 532, 3 Am. Rep. 269, and the New Jersey Act of March 31, 1869, § 8, P. L. 1022), the court below rightly said:

"It is true that at that time Mickle did not own the land under high water; it belonged to the state of New Jersey. However, the riparian owner,

that is, the owner of the upland bounded on high water, had the right to fill in the land submerged by the tides, by complying with the state statutes and regulations, and exclude the water from overflowing the land- thus made. So that while Mickle did not actually own the land which was being submerged, he stood in a different relation to the upland from a mere stranger."

Such being the relation of the upland and the submerged meadow, and Mickle as upland owner being the possible future owner of the latter, he made the map in question. It treats the upland and submerged meadow as a whole. Its plotting unmistakably shows an intent on Mickle's part, not only to lay out lots and dedicate streets on the upland, but evidences as well his purpose to fill the submerged frontage and to lay out such a connected system of streets through his submerged land as to connect with his upland streets. Moreover, it will be noted he treated the different parts of the submerged abutting land in dissimilar ways. To illustrate: A creek or estuary divided the submerged land into two parts. North of the creek block lots were plotted on the submerged land, and the upland streets were run clear across such submerged land, so as to reach a plotted cross street which ran along the low-water line. But south of the creek no cross street was laid out on the submerged land at or near the low-water line, but only through the main body of the submerged tract. To this cross street and no further, were the upland cross streets, including Winslow, carried down. It is suggested that the making of Winslow street across the submerged land by dotted line evidences only a possible, but not an actually, run or dedicated street. It is true that in surveys dotting is often used where a line has not been actually run. Newman v. Foster, 3 How. (Miss.) 383, 34 Am. Dec. 98, but this map, as well as the two others here in question, use dotting to indicate lines on submerged ground. Moreover, that some dotted lines on this meadow were actually run is shown by the recorded measurements of three of its sides.

In further contrast it will be noted that south of the creek the whole meadow in front of the cross street at which Winslow, Viola, Emerald, Jasper, Ionia, and Van Hook streets ended was plotted in a solid tract of ascertained acreage, thus evidencing Mickle's purpose not to give Winslow street a water outlet, but that when the flat was reclaimed Winslow street was to stop at the intersecting cross street. It is, however, contended that as Winslow street was plotted to reach the then high-water line, that fact alone should be considered, and from it a dedication to high-water mark be inferred and decreed. But such reasoning is to our mind unsound in logic, unjust in principle, and at variance with rules of construction. The whole map, the ownership of the upland, its incident of reclamation and possible ownership of the abutting submerged land, the utilization of such filled land for wharves, manufacturing, and other private uses in a large city, were factors in the mind of a riparian owner making a plot that cannot justly be ignored in ascertaining the purpose sought to be expressed by his map. Indeed, to hold that this map dedicates Winslow street to high-water mark sets at naught an intention to the contrary, as clearly expressed in this map by lines and limits as Isaac Mickle could have expressed it in words. That even the actual opening of a road to the water front

is not conclusive evidence of dedication is pointed out in Palen v. Ocean City, 64 N. J. Law, 669, 46 Atl. 774. There a road was opened to an existing wharf, and it was contended that when the site of the wharf and submerged abutting land was reclaimed, the road followed through the reclaimed land to the advanced high-water front, in accordance with the rule that streets leading to the high-water line of navigable streams will be continued over reclaimed land. But it was held in that case that this rule had no application, and the real question was whether the wharf where this road ended had been dedicated to public use. If the interposition of a nondedicated wharf at the end of a road prevents a dedication of such road beyond such wharf when its site is reclaimed, it would, by analogy, seem equally clear that when Mickle clearly expressed his intent that Winslow street should only extend a limited distance through the reclaimed frontage, such lawful purpose should be respected. It is clear, therefore, that the court committed no error in inferring from the map a purpose on Mickle's part not to dedicate Winslow street to high water mark.

We next consider the map of the Manufacturers' Land & Improvement Company, by which in 1874–1875 that company plotted in lots its Brown tract, which adjoined the Mickle tract on the south. The northeast end of its Brown tract overlapped the southwest corner of the Mickle map. This plot, evidently with the object of co-ordinating the street systems of the two tracts, extended the Mickle streets through the Brown tract. In this way the streets and blocks, but not the lots of the Mickle property, were shown on the Manufacturers' map. By this map it is alleged Winslow street was shown as opened to high water; and, as the Manufacturers' Land & Improvement Company subsequently purchased the Mickle property and reclaimed and filled the land in front of Winslow street, it is contended its map was a dedication of such street to the water front of the filled land. But it should be observed that the land company's map does not in fact evidence the alleged intent to open Winslow street to high water. While its draftsman, who evidently intended to follow the Mickle map in ending Winslow street at the cross streets on the submerged land, has protracted the side lines of that street somewhat beyond the river side of the cross street, it is evident that it was a mere inaccuracy, since no shore line or high-water mark is shown to connect with such extended lines. But passing this and turning to the all-controlling facts it will be observed that when its map was made the Manufacturers' Land & Improvement Company was not the owner of the Mickle upland or of its submerged frontage, and that Winslow street as plotted on said map did not abut the Brown tract, but lay wholly within the Mickle tract. But apart from the land company's inability to dedicate the property of another to a public use, it seems to us the map clearly shows that the inclusion of Mickle land, and indeed of the property of other abutters on the south and east of the land company's property, was solely for the purpose of co-ordinating it with the intersecting streets in that portion of the city. In that respect the court below well said:

"The showing of the streets and the blocks formed by them on the tract to the north of the Brown lands can hardly be said to have been any more at that date than a showing of the lay of the land to the north of the land company's property; and that the streets of the company's land running north and south connected directly with other streets on the adjoining land. An examination of the plotting of the lands not then owned by the company discloses a notable difference at the water front; while the map of the company's land shows high-water mark, no such high-water mark is shown, or attempted to be shown, on the maps of the land to the north thereof. The streets running toward the river are left with open and irregular ends, indicating rather the directions of such streets than their exact ending."

We are therefore of opinion that this map of the land company in no way affected Mickle's land, and the subsequent purchase thereof by such company, in and of itself, gave the map no other effect than it had when made. And this conclusion is in accord with the recent case of Camden v. McAndrews, 88 Atl. 1034, not officially reported, lately decided by the Court of Errors and Appeals, where in discussing the relation of this map to Winslow street and to property conveyed by successors to Mickle's title, that court said:

"The company made various conveyances, referring to this map both by names of streets and by block and lot numbers. The rule is of course too well settled to admit of question that the use of such a map as a sales map, and reference to it in the deeds and descriptions therein of lots as bounded on a designated street, constituted a dedication to public use of the street as laid out thereon. Clark v. Elizabeth, 40 N. J. Law, 172. This court has so held with reference to the very tract plotted on this land company's map, in the litigation between the same parties, but as to a different part of the tract. But that decision related to Jefferson street, the next street south of Winslow street, and which was within the tract owned by the company when the map was made, and running between and through lots exhibited for sale. The present case is different and in the aspect now under examination presents the question whether the delineation on the map of a street which does not traverse or bound any of the owned property, coupled with sales of property by reference to such map, but bounding on other streets, operated as a dedication of the first-mentioned street. We are clearly of opinion that it does not. Naturally an owner (plotting) cannot dedicate streets over land that he does not own, and as Winslow street from end to end was located on alien territory, the location of it on the map could answer no purpose except that of location and to notify customers that such an actual or proposed street lay in a certain position with reference to the tract."

We accordingly hold the court below committed no error in inferring from this map no purpose on the part of the land company to dedicate Winslow street to high water. It follows, therefore, that defendant's title must prevail unless the land company has, by some subsequent act, made such dedication. Such dedication, the city alleges, was made by the company by its deed to West of May 11, 1881, and by its two deeds to Howell of 1884; the second deed to Howell being in confirmation of the first. The property covered by all three was part of the Brown tract, was owned by the land company when its plan was made, and was plotted in lots thereon. The trial judge refused to hold that such deeds themselves, or by reference to plans, dedicated Winslow street to high water. His so doing commends itself to us, and is supported by the Court of Errors and Appeals in Camden v. McAndrews, supra, wherein that court, referring to the deed "to West in 1881 of property bounded by Winslow, Jefferson, Fourth street, and Broadway," said:

"As between the parties this is plainly a dedication of Winslow street in front of the premises conveyed, and doubtless as far as the nearest cross street. In Clark v. Elizabeth, 40 N. J. Law, 172, there was express reference to the city plat, and this supported a dedication of the street as appearing on that plat. In fact almost all of the reported cases are based on either the promulgation of a layout of lots by the owner or his adoption of an official plat. In the case of a mere reference to a street as fronting the property conveyed, there being no map or plat referred to, it would be impracticable to extend the dedication beyond the length of that street as actually opened at the time of that conveyance, and it is undisputed in this case that Winslow street was not open to the west of Third street. So the deed to West has no bearing in the case at bar."

The Howell deeds refer both to the land company's map and the city map, which is alleged to show Winslow street open to high water. Of these deeds the court further says:

"Two deeds refer to both maps. They are made by the land company to Zophar C. Howell, and the second is confirmatory of the first. Several tracts are indicated, but none of them bounds on Winslow street, nor is that street mentioned, and the evident intent of the reference to the city map is to superpose the land company's map on it, and thus indicate a coincidence of streets laid on both maps. The result is thus to limit the adoption of the city's map to so much thereof as is plotted on the land company's map, the description being by lot and block numbers on the latter map."

Holding as we do, the judgment below is affirmed.