THE BOARD OF TRUSTEES OF THE VILLAGE OF RIDGE-FIELD PARK, RESPONDENT, v. NEW YORK, SUSQUE-HANNA AND WESTERN RAILROAD COMPANY, APPELLANT.

Submitted July 7, 1913—Decided January 29, 1914.

1. In ejectment, plaintiff makes sufficient *prima facie* proof of title to support the action by tracing his paper title back to a grantor under whom the defendant also solely claims.
2. The filing in a public record office by a landowner of a sales map or plat showing the land divided into blocks and lots with intersecting streets, and the sale and conveyance by such owner of lots by reference to said map, constitute a dedication to public use of the streets so delineated, so far as the title of such owner to the lands plotted thereon extends.
3. Where on such a map, a railroad is delineated as crossing a street or streets shown thereon, the portions of such streets included within the lines of the railroad are not reserved from dedication as highways, but the natural inference is that a crossing of the railroad by the street is intended.
4. Where the owner of the lands delineated on said map was a corporation, proof that such map remained on file for many years without disclaimer by the corporation, and that it made various deeds by reference thereto, indicates, at least *prima facie*, that the filing and use of the map as a sales map was authorized by the corporation.
5. The supplement of 1906 to the Road act (*Pamph. L.*, *p.* 97; *Comp. Stat.*, *p.* 4467) is not effective to work a vacation of a road or street for twenty years' non-user so long as any part of such street has been used by the public within the statutory period.

On appeal from the Supreme Court.

For the appellant, *Collins & Corbin.*

For the respondent, *William J. Morrison, Jr.*

The opinion of the court was delivered by

PARKER, J. The suit was in ejectment for the purpose of subjecting to public use as a street a tract of land occupied by the tracks and part of the station approaches of the defendant, lying between the lines of Mount Vernon street, formerly called Fourth street, in Ridgefield Park. The fundamental question is one of dedication and its efficacy; and if dedication is made out, a further question arises whether there was a vacation on account of non-user of the said street or the portion claimed as a highway within the terms of a statute of 1906 hereafter to be discussed.

The claim of dedication rests mainly upon the making and filing by a land company of a sales map in 1867 and the selling of lots by reference thereto. There was no formal acceptance until 1907; but there seems to be no limitation generally on the time of acceptance and user by the public. *Freeholders* v. *Sharpless,* 54 *Vroom* 443; *South Amboy* v. *New York and Long Branch Railroad Co.,* 37 *Id.* 623. Indeed, the formal acceptance was unnecessary, as the bringing of the action is a sufficient acceptance. *Atlantic City* v. *Groff,* 35 *Id.* 527.

The case was tried without a jury. The evidence shows that about 1867 a large tract of land embracing the premises in question, was assembled by several purchases and deeds were made to the Ridgefield Land and Building Company, a corporation of this state; that in that year a map of the property bearing the company's name was made and filed in the county clerk's office, and that the deeds made by said company for lots sold have principally or entirely been by reference to this map or to a second one substantially identical with it, under the same name, and dated in 1870. On both maps Fourth street appears as a highway, running westerly from Overpeck avenue to the Hackensack river, a distance of about two-thirds of a mile, paralleled by other streets and intersected by various cross streets traversing the tract, which has grown into a populous settlement. Defendant apparently claims paper title under a deed of the land company to defendant's predecessor, the New Jersey Midland Railway Com-

pany, in October, 1870, describing a strip sixty-six feet wide, being thirty-three feet wide on each side of the located centre line of the railroad and running from the north to the south boundary of the land company's tract. No streets are mentioned, and the map is not referred to, but it had been on file for three years, and deeds had been made by it to other purchasers.

It is urged that the trial court should have nonsuited, or should have ordered judgment for defendant, on several grounds. With respect to the motion to nonsuit it may as well be said that it was merely suggested when plaintiff rested, and reserved until the end of the trial, at which point the whole case was reserved for counsel to submit briefs; the practical effect of all which was to merge the motion to nonsuit into a motion for judgment on the whole case. The real question, therefore, is whether the court erred in giving judgment for plaintiff.

It is first urged that plaintiff failed to prove such title as would support the judgment. It was not denied by plaintiff that defendant had title to the land itself for railroad purposes, under the deed already referred to; the real question being, of course, the existence of a public easement for a street. It is claimed by defendant that plaintiff failed to trace its paper title back to the proprietors or to some one shown to have been in possession of the premises. But it plainly appeared that defendant's title as well as plaintiff's was derived from the land company, and it is sufficient to trace the plaintiff's title back to a common source, provided defendant does not claim by any other title and plaintiff's title so derived is superior. 10 *Am. & Eng. Encycl. L.* (*2d ed.*) 491; 15 *Cyc.* 41, 47; *Gaines* v. *New Orleans,* 6 *Wall.* 642; *Union Consolidated Mining Co.* v. *Taylor,* 10 *Otto* 37; *Robertson* v. *Pickrell,* 109 *U. S.* 608.

We may add that there was evidence of acts of ownership by the land company, quite sufficient to support a finding that it was in lawful possession at the time the maps were made; and that the absence of more ample evidence on the point is without doubt due to the failure of defendant to raise this

question specifically at the trial or until the written briefs came in thereafter. An examination of the printed book leads to the conclusion that there was no serious question raised at the trial as to the ownership and possession of the land company, but that both parties claimed under that source of title.

The next and principal argument is that no dedication of Fourth street was shown.

We conceive that few propositions of law are better settled in this state than that when the owner of a tract of land maps it into blocks, lots and streets for purposes of sale, files his map in a public record office and sells lots by reference to such map, he thereby dedicates the streets shown thereon to the public so far as his ownership then extends.

*Pope* v. *Union,* 3 *C. E. Gr.* 282; *Trustees* v. *Hoboken,* 4 *Vroom* 13; *Attorney-General* v. *M. & E. R. R. Co.,* 4 *C. E. Gr.* 386; *Clark* v. *Elizabeth,* 11 *Vroom* 172; *McAndrews & Forbes Co.* v. *Camden,* 8 *Buch.* 244; *Camden* v. *McAndrews & Forbes Co., ante p.* 260. And if a street be shown on the map as extending to the water, the dedication will carry it to any new water line created by filling, &c., *Hoboken Co.* v. *Hoboken,* 7 *Vroom* 540; *Camden* v. *McAndrews & Forbes Co., supra;* and when a street has once been dedicated, the right of the public to appropriate it to their use at any time when their wants or conveniences require it, cannot be defeated by any subsequent act of the dedicator or of those claiming under him. *McAndrews & Forbes Co.* v. *Camden, supra; Freeholders* v. *Sharpless,* 54 *Vroom* 443.

The defendant does not seriously question these rules of law, but seems to rely on the fact that on the map of 1867 a strip of land is laid down with the conventional indications of a railroad track a short distance west of where the defendant's present right of way would fall on the map and marked "Cherry Hill Railroad," and on the map of 1870 the marking is changed to "N. J. Midland Railway & New York & Oswego Midland Railroad" (the predecessors of defendant). The claim is that this showed a dedication to railroad purposes which negatives the idea of a street at that point. It

seems to be conceded that the location is different, but it is claimed that a reservation existed which shifted to the actual location of the railroad when constructed. We are not called upon to decide whether such a reservation would so shift, for in our opinion the original reservation from dedication is not made out. *Ayres* v. *Pennsylvania Railroad,* 19 *Vroom* 44, is relied on; but in that case the railroad was laid longitudinally through the street, known as Railroad avenue in Rahway. Such a condition is familiar; it exists, for example, in Burlington, and in Railroad avenue in Newark; and was common in the earlier days of railroading. But we think it could never be rightly claimed that when on such a plat streets are shown crossing the railroad, one side of the town is to be held as cut off by the railroad from the other. In the case at bar the railroad is not laid longitudinally in any street. It crosses Fourth and Fifth streets; and the only proper construction to put upon such indications is that of the ordinary case of a railroad crossing a public road, the user of the land being common to the railroad and the public.

It is further argued that the making and filing of the map was not brought home to the land company as a corporate act. If it be intended to argue that the plaintiff was required to show by the minutes of the company or some other competent evidence, the adoption of the map by formal resolution of the directors of the company, we cannot assent to any such proposition, which would unsettle land titles all over the state. On the contrary, a map filed among the public land records as that of a specified owner and allowed to remain there for years not only without dissent of that owner, but actually used by it in the sale of lots and the drawing of deeds therefor, must be considered, *prima facie* at least, as duly authorized by such owner.

We conclude, then, that the trial judge was justified in finding that the whole of Fourth street had been legally dedicated by the land company as a public street, at or before the time the railroad deed was made, subject to use of part thereof as a railroad crossing; that as a result such deed conveyed no exclusive right as against the public, but that

upon later acceptance of the dedication the public was entitled to use the street across the railroad; and that such acceptance appeared.

This was the result reached upon the original argument. The case was reserved for reargument in view of the statute of 1906 (*Pamph. L., p.* 97; *Comp. Stat., p.* 4467, *pl.* 82*g*), providing that "whenever the owner or owners of any land situated in any township of this state shall have heretofore caused same to be laid out by a map or plan showing a road or street, and shall have caused the same to be recorded without having actually opened said road or street, and without having had said road or street accepted by the township committee as provided by the eighty-second section of the act (the Road act) to which this is a supplement, and shall have afterwards sold and conveyed the land so laid out as a road or street to some other person or persons without having actually opened the same, and said land shall have remained unopened as a road or street by the subsequent owner or owners thereof and unused as such for a period of over twenty years, the right, if any, to have the said land opened and used as a public road or street, without the consent of the owner or owners of the fee, shall cease and determine, and said land is hereby declared to be free and discharged from any easement or servitude as a public highway."

The question discussed on reargument was whether this act applied, and was controlling, especially in view of changes in the corporate character of the municipality since 1867.

It is not necessary to consider the questions whether the statute applies to lands which formed part of any township at the time of the dedicating act, and whether if the conditions laid down in the act are otherwise met, the statute takes effect, without regard to the character of the government which was exercised over the township when the twenty years began to run; because we consider that the statute cannot help the defendant in this case for two reasons: First, it applies only where the land remains unopened as a street and unused as such; and we think there is some evidence showing some user of this particular piece of land within the twenty-

year limit after the making of the map. But another and graver reason is that this statute applies not to parts small or large of a street shown on a plan or map, but to the whole of it, and so when any part of it is used the statute has no application. This is the purport of our decision in South Amboy *v.* New York and Long Branch Railroad, following our earlier decision in *Humphreys* v. *Woodstown,* 19 *Vroom* 588, where we had under consideration the construction to be given to section 78 of the act to which the present one is a supplement. *Comp. Stat., p.* 4462. That section provides "That all public roads having been laid out by surveyors or otherwise and not opened, worked or used for more than twenty years next before the 24th day of March, 1859, shall be considered, and they are, hereby vacated." This act was passed in 1877. It is quite similar to that now under consideration so far as the point which we have been discussing is concerned. We held in the cases referred to that this provision refers only to cases where no part of the road laid out has been opened and used. It is undenied or amply proved in the present case that parts of the road on each side of the *locus in quo* as shown on the original map are now and have always been in the enjoyment of the public as a public highway. The act of 1906 being *in pari materia* to section 78, the decision in the South Amboy case should be deemed controlling, and consequently the judgment brought up will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ.   12.

*For reversal*—None.