## McELROY et al. v. BOROUGH OF FT. LEE.
### No. 4433.

Circuit Court of Appeals, Third Circuit.

Jan. 17, 1931.

Seufert & Elmore, of Englewood, N. J. (J. Laurens Elmore, of Englewood, N. J., of counsel), for appellants.

Mackay & Mackay and Howard Mackay, all of Hackensack, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

Robert L. McElroy and Lula McElroy brought this suit to recover the value of land which, they say, the Borough of Fort Lee unlawfully took from them for street purposes. The court directed a verdict for the defendant and the plaintiffs appealed.

There are two questions of law arising from two claims for damages. The first is easily disposed of. It arises under paragraphs 5, 7 and 9 of the complaint wherein the plaintiffs concede power in the defendant to change the grade of streets upon making compensation to owners of lands abutting on the streets, aver that the defendant so changed the grade of one street on which their lands abutted and allege that it has not compensated them for the resulting damages.

When both sides rested, the plaintiffs neither presented points nor otherwise asked the court to charge the jury that they were entitled to damages for the changed grade, nor, so far as we can find, did they cite to the court any statutory law giving them a right to damages. Except perhaps a state statute—said to be repealed—which provided for damages to the owner of buildings on lands abutting on a street whose grade had been changed, there, seemingly, is no law. However that may be, there is no evidence that any buildings were on the plaintiffs' land. Therefore the directed verdict in so far as it affected damages resulting from change of grade was right.

In all deeds in the chain of title, running through many years and including the plaintiffs' deed at the time of the alleged appropriation of their land by the Borough, there was a reservation in these words:

"This conveyance is made subject to the right and privilege hereby expressly reserved to take so much of the easterly part of the said first described tract of land as may be necessary or required to straighten old Palisade Avenue as contemplated by the said party of the first part (Hudson River Realty Company, a corporation of New Jersey), by extending New Palisade Avenue as laid out and shown on said Section No. 1 of the Map of Palisade the Property of the Hudson River Realty Company, northerly from the northerly end thereof as laid out on said map across said tract until it intersects or runs into Old Palisade Avenue as now in use by the public, said New Palisade Avenue to take the place of the part of Old Palisade Avenue, so straightened and to be used for the same purposes."

This reservation was first inserted in a deed made by the Hudson River Realty Com-

pany. As the same reservation reappeared in each succeeding deed, it would seem on first view that the reservation in each deed was made by and ran to each grantor who, accordingly, had he wished, could take for street purposes so much of the reserved premises as would be necessary to straighten Old Palisade Avenue by extending New Palisade Avenue northerly to a point of juncture with Old Palisade Avenue. But no grantor of title so construed the reservation; certainly none acted under the reservation, perhaps for the reason that, except the first, each grantor in succession had the reservation as it appeared in each preceding deed running against him, thus leaving the right to take property for street purposes either in the Realty Company, the original grantor, or, by its dedication, in the Borough which eventually took land named in the reservation, yet not avowedly by force of dedication but ostensibly through condemnation proceedings initiated under an ordinance authorizing the proceedings. The trouble is that the Borough, in straightening Old Palisade Avenue, did not open up the new street on the land described in and covered by the ordinance but, under proceedings condemning other land, laid out the street close to it yet on land different from that of the ordinance. On these facts, which are not disputed, the plaintiffs assign error to the court in directing a verdict for the defendant.

At the argument on appeal and later in our study of the case we found that the main discussion revolved around questions of dedication to the Borough and rights reserved to the grantors in the deeds to take lands for street purposes. We realize that to sustain the judgment on a verdict directed for the Borough it must appear somewhere or somehow that the Borough could lawfully take the excepted land for street purposes, and that its right lawfully to do so was acquired in one of three ways, namely; by dedication, title, or condemnation proceedings. As the Borough never had title by deed and as it took by condemnation proceedings land different from the land covered by the ordinance authorizing the proceedings, we addressed to the attorney for the defendant a letter asking for a further brief on two questions which we propounded as follows:

"Laying aside the matter of dedication for the present,

"(1) If the Borough relies upon title, how did it acquire an interest in or a right under the reservation appearing in the several deeds beginning with the one from the Realty Company to Smith?

"(2) If it relies upon condemnation proceedings under a valid ordinance passed before plaintiffs acquired title, how does the Borough justify appropriating land (here in suit) for road purposes which is not the land covered by the ordinance authorizing the condemnation proceedings?"

The defendant's answers to these questions were elaborate but not convincing. Therefore we shall ourselves search for the defendant's claimed right through dedication, title and condemnation.

Before passing upon the lawfulness of the Borough's act we shall inquire into the right of the plaintiffs to recover, if the act was unlawful, in view of the Borough's contention that the plaintiffs are not now the owners of the land for whose taking they claim damages. It is true that they do not now own the land but they were owners of this or adjacent land at the time the property was taken and, if unlawfully taken, they were the parties injured and for such an injury they have the right to sue for damages.

The right of compensation is a personal one and does not run with the land. 20 C. J. 1185. The owner of the land at the time the right is invaded or the trespass committed is entitled to recover and the subsequent vendee of such an owner takes the land subject to the right of his injured predecessor to exact and receive the compensation. Kindred v. Union Pacific Railroad, 225 U. S. 582, 32 S. Ct. 780, 56 L. Ed. 1216; Central R. Co. of New Jersey v. Hetfield, 29 N. J. Law, 206.

Returning to the three main questions and taking them up in inverse order, it is clear that the Borough appropriated for street purposes land other than the land of the ordinance. Therefore it cannot justify under the condemnation proceedings. It stands in relation to the land taken as though there had been no such proceedings. Hence its right, if any, must be found in title or dedication.

The most it could have had was an easement in the large tract, conveyed from time to time, and a corresponding right to take that part of the tract which was reserved for the defined purposes. If it had such an easement it must have acquired it by deed or dedication.

If an easement, how did it acquire it? Certainly not by deed for the Borough ap-

pears nowhere in the chain of title. No owner of the land at any time conveyed to the Borough an easement or any other interest in the land. The Borough therefore can justify only on the ground of an easement or right acquired by dedication, a question vigorously contested yet not discussed by the trial court which, it seems, disposed of the Borough's action in appropriating the land on the theory that either it had a property interest in the land reserved or the rights under the reservation remained in the Realty Company, which is not a party to the suit.

Whether there was a dedication depends on the meaning of the reservation gathered from its words signifying the intent of the original grantor to make a dedication, and also on whether the reservation, properly interpreted, was a property right withheld by each grantor, or a property right withheld by the original grantor, to be exercised by him alone, or was a right that extended to the Borough to be exercised by it at its will, yet, of course, within the limitations of the reservation and particularly within the law having to do with the dedication of private land for public uses.

 Before coming to the reservation itself we shall make several observations on the New Jersey law of dedication and briefly run through the title to the property. Like a reservation in a deed, 18 C. J. 348, a dedication should describe the property with sufficient certainty. In meeting this requirement of certainty the property may be described in many ways. Thus it is clearly established in New Jersey that a conveyance of lands by reference to sales maps and plats, especially when they are recorded, constitutes a dedication to public use of the streets delineated thereon so far as the ownership extends at the time the map is made. City of Camden v. McAndrews & Forbes Co., 85 N. J. Law 260, 88 A. 1034. The court held in the same case that a description in a deed of property conveyed as bounding on a named street (Winslow Street) without referring to any map and without any other ascertainment of the length of such street operates as a dedication of the street no farther beyond the frontage of the tract conveyed than it is actually open at the time of delivery of the deed. But where a deed refers to a street on a map of the grantor (as will presently be disclosed in this case), acceptance by a grantee of a deed referring to the property conveyed as lying on that street operates as conclusive evidence of an assent by the grantee to the devotion of that property to street uses.

In Tweddell v. South Orange, 95 N. J. Law, 327, 331, 112 A. 511, 513, the court, citing and following City of Camden v. McAndrews & Forbes Co., supra, discussed the doctrine of dedication and particularly "the making and filing of a plat or map by an owner with streets laid out thereon, the making of deeds by an owner bounded by or including land called in the deed a street and without any reservations as to its public use; the combined use of the map and the designation in the deed; and finally the mere acceptance from a former owner of a deed describing the property in terms of the street."

██ In the case at bar there was no formal acceptance of the dedication by the Borough. Nor was formal acceptance necessary. Atlantic City v. Groff, 64 N. J. Law, 527, 45 A. 916. This is for the reason that the fact of dedication cannot be denied and when that fact has been established the dedication is irrevocable. The public rights resulting from dedication "may be suspended and lie dormant until such time as, in the judgment of proper legal authority, public exigencies require their possession and use." Once the owner of property dedicates it to public use he cannot recall the dedication except by consent of the municipality acting in behalf of the public. Clark v. City of Elizabeth, 40 N. J. Law, 172; Hulett v. Borough of Sea Girt, 106 N. J. Eq. 118, 150 A. 202, 205; citing Dodge & Bliss Co. v. Jersey City, 105 N. J. Eq. 545, 148 A. 783; Long Branch v. Toovey, 104 N. J. Law, 335, 140 A. 415; Trustees of Methodist Episcopal Church v. City of Hoboken, 33 N. J. Law, 13, 97 Am. Dec. 696. When an owner has parted with his property by dedication it is equally true that his grantee, taking nothing, cannot recall the dedication or recover for its use.

In connection with this law we now give the stipulated chain of title in outline. For present purposes the original party in title was the Hudson River Realty Company which in 1910 conveyed a large tract to Smith; in 1913 Smith conveyed it to Robert L. McElroy; McElroy and his wife conveyed it to Crooker in 1914; on the same day Crooker conveyed it back to Robert McElroy and Lula McElroy, his wife (the plaintiffs), as joint tenants; the land reserved was taken by the Borough in 1920; McElroy and his wife, after the Borough had made the improvements, conveyed the remainder of the land to Belle Mead Development Corporation in 1924, and brought this suit in 1929. All deeds covered precisely the same property exclusive of the property reserved for street

purposes and certain lots specifically excepted and comprised about 130 acres. All deeds, even the one from the plaintiffs following the opening of the street, contained and were subject to the reservation first quoted.

Having touched upon the law and the title, we finally inquire into the meaning of the reservation quoted in the beginning of this opinion and particularly to what portion of the reserved property it is directed.

██ ██ The plaintiffs in declaring in their complaint on the trespass or wrongful act of the Borough showed by an appended schedule through metes and bounds the property which the Borough took to straighten Palisade Avenue, comprising 5.20 acres. In that description there is a very pertinent expression on which, in our judgment, an interpretation of the reservation as a dedication mainly rests. As the plaintiffs are bound by their own description of the property, they are equally bound by what the description discloses as bearing on the interpretation of the reservation. The plaintiffs say in describing the appropriated property that it began "at a point formed by the intersection of the center line of Euclid Road and the center line of Palisade Avenue as laid out and shown on Section 1 of the map of Palisade, the property of the Hudson River Realty Company, filed in the Bergen County Clerk's Office as Map No. 936, and running from thence" in a northerly direction in the easterly side of the tract to a juncture with Old Palisade Avenue. Evidently Palisade and the tract of 130 acres comprised a land scheme of the Realty Company and it had either the whole or a part of the land mapped and the map recorded, on what date does not appear but presumably during the time the Realty Company held title to the 130 acres of which it divested itself by conveyance to Smith in 1910. Palisade Avenue, as mapped, existed before the deed from the Realty Company to Smith, for it is specifically referred to in the reservation of that deed and its extension through the land conveyed is the subject-matter of the reservation. So also Old Palisade Avenue on this map is the same avenue which then existed and later exists by that name crossing Euclid Road, and extending to the 130 acre tract, conformably with the designation in the reservation. Thus it is certain that at the time of the reservation, because named in it, Palisade Avenue and Old Palisade Avenue were shown on the map and shown also as crossing Euclid Road and extending into or along the side of the 130 acre tract. Old Palisade Avenue was in the

shape of an arm having two or three crooks and it was the intention of the Realty Company, as plainly expressed in the reservation, that it should be straightened by extending New Palisade Avenue "as laid out and shown on Section No. 1 of the Map of Palisade, the property of the Hudson River Realty Company," to a point joining Old Palisade Avenue farther north. This evidently is the map of which the plaintiffs speak in their schedule as having been recorded in the Bergen County Clerk's Office or certainly a map in existence and used for purposes of sale or conveyance, or both, on which the wording of the reservation reads, and is the kind of map contemplated by the New Jersey law of dedication. Moreover, it would seem that both the reservation in the deeds and the description in the schedule of the plaintiffs' complaint refer to the same map. At all events the descriptions of the property in the two instruments correspond. There is no lack of certainty in the reservation, and therefore none in the dedication, in respect to the part of the tract out of which the reservation was carved—"the easterly part of the * * * tract"; nor as to the starting point of the extension—"New Palisade Avenue"; nor as to the width of the extension—that of New Palisade Avenue; nor as to the direction of the extension—"northerly from the northerly end" of New Palisade Avenue. The only uncertainty, reckoned by courses and distances, is the ending of the extension at some place in Old Palisade Avenue, yet that uncertainty is minimized, if not entirely eliminated, by the given starting point and the given direction of the extension and the plainly expressed purpose of straightening Old Palisade Avenue by taking out the crooks, where the crooks occur, and joining the extension with Old Palisade Avenue where it takes a straightaway course.

Manifestly the Realty Company, the first proponent of the reservation, contemplated that the straightening out of the old road by making a new street through the reserved premises should be done some time by some one. It finally was done by the Borough in 1920. That it was intended to be done by the Realty Company or its succeeding grantees in the chain of title is not stated. Yet it is clear that the reservation is not exclusive as to the Realty Company or as to its successors in title. Rather, it would seem not only from the wording of the reservation but from the conduct of all the parties in title with respect to it that the proposed opening of a new street which would straighten out

an old street and make proper connections with and between various streets and tracts was to be done by a street opening instrumentality, namely, a municipality, which in this instance was the Borough of Fort Lee. Surely if the Borough of Fort Lee had without condemnation proceedings entered upon the land, regarding that an easement of the land had been dedicated to it for the named purpose, and had appropriated within the limitation of the reservation such land as was necessary for that purpose, no holder of title subject to the reservation could have complained. This is what the Borough did, though complicated and very much confused by ostensibly acting under a condemnation proceeding by virtue of an ordinance with respect to one piece of land and actually appropriating another piece of land.

We construe the reservation as a dedication and regard the condemnation proceeding as a redundant legal proceeding which did not legally disturb the Borough's exercise of the right which, long before, it had acquired under the dedication.

In view of the questions involved this is a rather long opinion; yet we feel that by reason of the very earnest and thorough argument made by the plaintiffs' attorney he is entitled to a full expression of our views, even though the questions raise no new law and in respect to which there can be no general interest and of which there cannot be a full understanding without the aid of maps.

The judgment is affirmed.