KRUGER v. CONSTABLE et al. (two cases).

(Circuit Court, S. D. New York. June 14, 1902.)

1. STREETS—DEDICATION—MAPS AND SURVEYS.
    The mere making of a survey and a map platting land in lots and streets, but which is not recorded nor exhibited to the public, and in reference to which no lots are sold, is not a dedication of such streets to the public.

2. SAME—MAPS—FILING—SALE OF LOTS—EFFECT.
    Where one makes a map platting his land in lots and streets, files it in a public repository, and sells lots on such map with reference thereto, he thereby permanently dedicates such streets to the public, notwithstanding that the public is not bound to maintain them until the dedication has been accepted by the proper public authority.

3. JUDGMENTS—RES JUDICATA—IDENTITY OF ISSUES.
    An adjudication of dedication of a street, based on evidence of the acts of a former and of the present owner, without particular reference to the acts of either, is not res judicata as to dedication by the former owner.

John Delahunty, for plaintiff.
Jacob F. Miller, for defendants.

¶ 2. See Dedication, vol. 15, Cent. Dig. §§ 35, 37, 46.

WALLACE, Circuit Judge. These are actions for the breach of covenants of title, good right to convey, and warranty in deeds of real estate; the first action being founded upon a deed from Richard Arnold and others to Beda Voight and wife executed April 3, 1882, and the second action being founded upon a deed from Richard Arnold to Beda Voight and wife executed March 24, 1886.

The plaintiff is a grantee of the Voights by a deed executed July 25, 1895. He alleges that before the execution of the deeds to his grantors part of the lands described therein had been dedicated by their then owner to the city of Newark, and that before the commencement of the action the city of Newark entered upon and took possession of the dedicated part and ousted the plaintiff therefrom.

The alleged dedication rests upon the theory that in 1873 Aaron Arnold, the devisor of the grantors of the Voights, who was then the owner of a tract of land embracing the lands in the two deeds to the Voights, caused, in conjunction with one Buchanan, who was the owner of an adjoining tract, the two tracts to be surveyed by Van Duyne & Young, and a map thereof to be made showing the two contiguous properties as one tract subdivided into blocks and lots with designated streets, one street being designated as "Littleton Avenue" and another as "Fairmount Avenue," and that subsequently Arnold and Buchanan publicly exhibited this map, and sold some of the lots numbered thereon by reference to the map.

It was proved upon the trial that a survey and map of the two tracts was made by Van Duyne & Young in 1873 for Buchanan and Arnold, and that the map was at one time on file in the office of Van Duyne & Young at Newark; but the original map was not produced upon the trial, and secondary evidence of its contents was excluded, because no foundation was laid by proving the loss or destruction of the original; consequently there was no evidence of the contents of the map beyond the fact that it was such a map as has been mentioned. It did not appear whether Arnold's tract embraced any lands other than those described in the two deeds to the Voights, nor how many lots the tract was subdivided into, nor what were the dimensions of the streets or the quantity of land included in their boundaries. On March 18, 1882, the Voights made a contract with Richard Arnold and others for the purchase of the lands pursuant to which the deed to them of April 3, 1882, was executed, and in that contract the lands were described as "lots numbers 185 to 214, inclusive, on the map of the property of Buchanan and Arnold, Newark, N. J., surveyed July, 1873, by Van Duyne & Young; also the lands lying in front of the lots on Fairmount avenue to the middle of said avenue, as proposed, and the whole of Littleton avenue, as proposed, as lies in front of said lots." When the deed was executed, however, that description was changed, and the lands described by metes and bounds. In this deed, and also in the deed to them of March 24, 1886, one of the boundaries of the land conveyed was defined as "the proposed center line of Fairmount avenue." The contract of March 18, 1882, was the only evidence that Arnold had ever proposed to sell any lots or any part of the surveyed tract by reference to the map or survey. At the time of the delivery of

the deeds to the Voights, and when they took possession of the lands included in their purchases, the tract had not been laid out in lots and streets, but the whole was surrounded by a fence. The map was never filed in the clerk's office of Essex county, and no evidence was given that it was ever exhibited publicly. Beda Voight testified that it was never exhibited to him. It is apparent from the contract of March 18, 1882, and also from the references to Fairmount avenue in the two deeds, that the Voights must have known of the existence of the map at the time of their purchase. The evidence, taken together, is consistent with the conclusion that Buchanan and Arnold had the survey and map of 1873 made in contemplation at some future day of subdividing their respective tracts, filing the map, and selling the tracts in lots, but that their project remained inchoate, and at the time when the deeds to the Voights were executed had never proceeded further than the making of the survey and map. The deed of May 3, 1881, made by Richard Arnold and others to Frederick Gartz, Jr., which was introduced in evidence, is of no value, as proving that any part of the tract had ever been sold by reference to the map. That deed refers to a map then on file in the office of the clerk of Essex county, and describes two lots by reference to such map; but it does not appear that there were two lots of these numbers on the map which was never filed, and the map referred to was presumably one of some other tract surveyed for Buchanan and Arnold. It further appeared upon the trial that in October, 1887, the Voights sold and conveyed to one Kirchner lots Nos. 174 and 175 by reference to the map of the property of Buchanan and Arnold surveyed in 1873 by Van Duyne & Young; that in the same month they sold and conveyed to one Grubb lot No. 173 by reference to the same map; that in August, 1889, they sold and conveyed to one Ulrich lots Nos. 151 and 153 by reference to the same map; and that August 15, 1889, they mortgaged to the plaintiff the land acquired by them under the two deeds, and in that conveyance described the property as "lots 153 to 175, both inclusive, and 185 to 214, both inclusive, as shown on the map of the property of Buchanan and Arnold, Newark, N. J., surveyed July, 1873, by Van Duyne & Young, including so much of Fairmount avenue and Littleton avenue as abuts on the aforementioned lots."

It further appeared upon the trial that Beda Voight remained in possession of the real estate conveyed to the plaintiff as his lessee, and was in possession throughout 1897; that proceedings were taken by the authorities of the city of Newark in 1897 to open certain streets known as "Littleton Street" and "Fairmount Street," being the part of the real estate claimed to have been dedicated to the city; that the streets were opened, and Beda Voight was dispossessed of the land lying within their boundaries; that commissioners to assess the damages under the proceeding for the opening of Littleton street made an award to Beda Voight for the value of the land taken for that street; that subsequently the city of Newark procured a review of the proceeding in the supreme court of New Jersey upon certiorari; and that the court reversed the award for damages

to Voight on the ground that the land taken for Littleton street had been dedicated to the city. It further appeared upon the trial that timely notice of the proceeding by certiorari in the supreme court was given by the plaintiff to the defendants, with a request to them to appear and contest the question of dedication, and that their counsel consulted with the counsel for the plaintiff, but left the active defense of the suit to the latter.

Upon all the evidence, I conclude that the plaintiff is not entitled to recover. His cause of action could only be established by showing that there had been a dedication of the lands as streets by the grantors of the Voights or their predecessors in title prior to the execution and delivery of the deeds to the Voights. The evidence fails to show that there had been such dedication, and if the city of Newark acquired any rights it would seem that it did so in consequence of the acts of the Voights and Buchanan subsequently. The mere making of a survey and a map platting the surveyed tract into lots and streets does not of itself constitute a dedication of the streets designated on the map to the public. According to the decisions of the courts of New Jersey, as well as the adjudications elsewhere, if the owner of a tract of land plots it in lots and streets by a map filed in a public repository, and sells lots on the map by a reference thereto, or by a map publicly exhibited, he thereby dedicates the streets on the map to the public. Although the acceptance by the proper public authority is also necessary in order to make the public liable for maintaining the streets in good order, the dedication may be accepted by the proper authorities at any future time, and the owner is estopped to deny the dedication, private rights having meantime intervened. Pope v. Town of Union, 18 N. J. Eq. 282; Hague v. Inhabitants of West Hoboken, 23 N. J. Eq. 354; Trustees of Methodist Episcopal Church v. City of Hoboken, 33 N. J. Law, 13, 97 Am. Dec. 696; Hoboken Land & Improvement Co. v. City of Hoboken, 36 N. J. Law, 540; Price v. Inhabitants of City of Plainfield, 40 N. J. Law, 608; Clark v. City of Elizabeth, Id. 172; Beasley v. Town of Belvidere, 59 N. J. Law, 408, 35 Atl. 797.

If the Voights chose to avail themselves of the map which had been made by Van Duyne & Young for Arnold and Buchanan in 1873, and on file in the office of the surveyors, they were at liberty to·do so; and, if they saw fit to sell lots by reference to it, they thereby, as against themselves at least and their subsequent grantees, dedicated to the public the streets designated upon it. They seem to have done this, and they, and not their grantors, are the parties liable, if there be any, to the plaintiff, and he must resort for relief to the covenants in their deed to him. The adjudication in the certiorari suit by the supreme court of New Jersey cannot be invoked as against the defendants upon the question of dedication, as it does not purport to decide, or incidentally to determine, the fact that there had been any dedication prior to the time when the deeds to the Voights were executed and delivered. It adjudges merely "that all that part of the land for which the said award of damages was made included in and shown upon the map of the Buchanan and Arnold properties which was offered and received in evidence in this cause

was at the time of the making of the said award dedicated to the public for the purposes of a public street." The evidence in the record of that suit indicated that the judgment may have proceeded upon the theory of a dedication to the public made subsequent to 1886, because it shows the conveyances of the lots made by the Voights in 1887 and 1889 by reference to the Buchanan and Arnold map, and also shows conveyances by Buchanan in 1888 and 1889 of lots by reference to the map. The testimony of Mr. Buchanan, as it appears in that record, would establish an earlier dedication; but it is strange if his statements were true that all the conveyances put in evidence were of a later date, and it cannot be determined whether the court accepted his testimony as correct, or whether its decision was based upon a dedication because of the conveyances of the Voights and Buchanan in 1887 and subsequently.

Upon the whole case two suggestions are raised by the evidence. It is hardly open to doubt that the Voights knew all about the survey and map, and whether any lots had been sold by their grantors from the tract. The first suggestion is that shortly after the Voights acquired title they concluded to sell off some part of their purchase in lots, in the belief that when the city of Newark should see fit to open the streets they could compel it to make compensation for the value of the land taken for the public use; and another is that there may have been a previous dedication, but that the Voights and their grantors supposed notwithstanding that the streets could not be opened by the city without compensation to the owners. Whatever the truth is, the case must be decided upon the evidence as it has been presented, and, as there is no proof of a dedication before the execution and delivery of the deeds to the Voights, the defendants are not liable.

Judgment is ordered for the defendants.