MATTHEW A. HERMANN

v.

MEXICAN PETROLEUM CORPORATION, a corporation duly incor-
porated under the laws of the State of Maine.

[Submitted and decided November 29th, 1915.]

1. Pending an action in ejectment, courts of law have injunctive power
to restrain waste and to protect and preserve the property involved.

2. A suit in chancery is commenced when process is issued.   The
statute requires the bill to be then on file.

3. Before the issuing of process, a cause is not "pending" in chancery,
so as to make it the subject of removal into the law courts, under the
Transfer of Causes act.

Mr. Peter F. Daly and Mr. Freeman Woodbridge, for the
complainant.

Messrs. McCarter & English, for the defendant.

BACKES, V. C.

The complainant claims to be the owner of a piece of meadow
land of about six acres, in the borough of Roosevelt, Middlesex
county, in the bill described by metes and bounds, and at a fixed
location, which he recently enclosed with a fence.   The defend-
ant has entered upon it for the purpose of building an embank-
ment to carry a railroad across the tract, connecting two of its
factories.   Upon the filing of the bill to restrain this trespass, an
order to show cause was granted, with a temporary stay.   On the
hearing it was shown that, December 28th last, Benjamin F.
Vail's executor conveyed to the complainant a tract of land by
the description contained in the bill of complaint.   Vail's paper
title was acquired in the sixties, and conveyed to him a piece
of meadow land in Raritan township, Essex county, of which
one John Ludlam died seized.   Where, in the township the
parcel is situated, is not stated in the deed with any degree of

certainty. The complainant attempted to locate it by a map which was found enclosed in Vail's deed, after his death, upon which is shown two ponds. By identifying the two ponds shown on the map, with the two on the *locus in quo,* and then tracing the outline of the tract, as disclosed by the map, he fabricated the description, which he set up in the bill as describing his property. Evidence was given showing that by permission of Vail salt hay had been cut on the land in controversy. The defendant sets up title under a chain running back as far as 1820, and also produced some evidence showing that owners in its chain of title, at various times, cut hay thereon.

If the complainant's title to this waste land were clear, I would regard the proposed act of the defendant as such a willful intrusion upon, and unwarranted appropriation of, the complainant's property, and the structure about to be placed upon it as such an irreparable injury as to warrant interference by injunction.

But, in order to justify an equity court's intervention, it must appear plainly that the complainant has title, which is free from doubt. *Allman* v. *United Brotherhood of Carpenters, 79 N. J. Eq. 150; affirmed, Ibid. 641.* Now, it is perfectly apparent, from a reading of the Vail title deed, upon which the complainant has builded, that it is very questionable whether the *locus in quo* passed under it. In the first place, the land thereby conveyed is stated to be in the county of Essex, and not in Middlesex county, where this property in dispute lies. I am not informed whether there is a township of Raritan in the county of Essex, but, as the deed stands, it is not to be assumed that it was intended to convey a title to land not in that county. And secondly, the generality of the description in the deed is of such uncertain and ambulatory location, that it can, if the map is to guide, be fitted to any piece of land in Raritan township, upon which may be located two ponds, corresponding to those on the meadow in question. For this reason a preliminary injunction must be denied.

Should the bill be dismissed? The title of the complainant is disputed, and the defendant has interposed a challenge to this court's jurisdiction over the controversy. The defendant's title

may be well founded, or it may not be, but it is not within the province of this court to examine into the merits. The jurisdiction of equity to entertain the cause, in the absence of elements strictly of an equitable nature, is ousted by a challenge, when it appears that the dispute of the complainant's title is substantial and not a mere pretence. The claim of the defendant to the land is rested upon the record title and exercise of ownership, and as arrayed against the demands put forth by the complainant, presents a purely legal question involving the title to land, the issue of which must be tried and passed upon in the law courts. Where irreparable injury is being perpetrated or threatened, this court will interfere by injunction, and if the complainant's case rests upon title to land which is disputed, the cause will be held, and the *status* quo of the parties maintained, pending the trial at law. When the wrong is such as equity will redress only after the complainant's title is settled at law, and no objection is made that the bill was prematurely filed, it will be held until that event. But where the jurisdiction is pleaded, and the cause involves no equitable features or injuries which this court alone can redress, then the bill must be dismissed. This is the rule, as I understand it, laid down in *Outcalt* v. *Helme Company, 42 N. J. Eq. 665,* and in *Mason* v. *Ross, 77 N. J. Eq. 527; Thropp* v. *Public Service Electric Co., 84 N. J. Eq. 144.*

Even though this court, in the present circumstances, is not permitted to intervene to prevent the threatened injury, the complainant is not without immediate available redress. In an action in ejectment, the supreme court may interfere by injunctive proceedings to protect him. Section 246 of our Practice act (*Comp. Stat. p. 4127*) provides that—

"In any action in which the right to lands or to goods and chattels is in controversy, the court or a judge may make an order for the protection of the property in controversy from waste, destruction or removal beyond the jurisdiction of the court, upon satisfactory proof being made of the necessity for such order and enforce such order by an attachment for contempt."

This was the practice before the statute was passed. *Den* v. *Kinney, 5 N. J. Law 634; Harker* v. *Christy, 5 N. J. Law 824;*

*Kircher* v. *Schalk, 39 N. J. Law 335; Oehme* v. *Rucklehaus, 50 N. J. Law 84.*

At the hearing, I was of the impression that the filing of the bill started the suit, and then stated that instead of dismissing the bill, as was formerly required, the cause would be transferred to the supreme court, under the provisions of the Transfer of Causes act, 1912 (*P. L. 1912 p. 417*), where the complainant could use ,the pleadings and proofs before this court for relief there.

Upon further examination and reflection, I have come to the conclusion that the order of transfer should not have been made. No subpœna was issued. The act provides for the transfer of causes "pending" in any court. Before the statute of *4 Anne, ch. 16 § 22* (A. D. *1705*), suits in chancery were begun by the issuing of process, after which the bill was filed. Though that statute, from which section 3 of our Chancery act (*Comp. Stat. p. 411*) was modeled, ordained that process should not issue till after the bill is filed, it did not alter the rule that the issuance of the writ was the commencement of the suit. In *Fitch* v. *Smith* and *Terry* v. *Smith, 10 Paige 9,* where the question arose as to which of two suitors had priority of lien, by reason of priority of suit, Chancellor Walworth said:

"The complainants in both of these cases sent their bills to the clerk's office at the same time, neither being aware of the fact that the other was about to commence a suit against the same defendant for a similar purpose. But, owing to a mistake, the deputy clerk, who acted as the appellant's agent, filed the bill immediately, and without applying to the vice-chancellor for an injunction thereon, in consequence of which mistake that bill got on to the files of the court two hours before the respondent's bill. And if the filing of the bill, before taking out and serving a subpœna or making a *bona fide* attempt to serve it, was the commencement of a suit in this court, the appellant would have obtained a preference in payment out of the property of the defendant, in consequence of this mistake of the deputy clerk. The filing of the bill, however, is not the commencement of the suit, although by statute the bill must now be filed before any process for the appearance of the defendant can be issued. *2*

*Rev. Stat. pp. 179, 180* §§ *70, 76.* It is true, in common parlance, we use the expression 'filing of the bill' to denote the commencement of a suit in chancery, instead of referring to the issuing and service of the subpœna, or the making of a *bona fide* attempt to serve it, after the bill has been filed, which is the actual commencement of the suit in this court." Citing *Webb v. Pell, 1 Paige 564; 1 Dan. Ch. Pr. 554.*

The authorities upon this point are collected in *United States v. American Lumber Co., 80 Fed. Rep. 309; 85 Fed. Rep. 827.* The presentation of a bill to the chancellor, and the granting thereon of an order to show cause why an injunction should not issue, with an *ad interim* stay, brings the litigation before him for a limited purpose, and is not the institution of the suit. It is merely before him on a motion to consider the question whether an injunction should issue when the suit should be commenced; to which the defendant enters but a special appearance for the purpose of combating the application, a privilege accorded him, which has grown into popular practice within recent years. The earlier method was to, in the first instance, grant a preliminary injunction, with the sealing of which a subpœna had to be issued, and, obviously, because the writ of injunction could not go forth except in a suit which had been begun. In *Allman* v. *United Brotherhood of Carpenters, supra,* the present chancellor had occasion to call attention to the correct practice. The result of my investigation is that at the time the order of transfer was made, there was no cause "pending" in this court, within the meaning of the Transfer act, and it will be stricken out and a decree entered dismissing the bill. The dismissal at this stage of the case—the jurisdictional question having been raised—is warranted by the practice. *Philadelphia Trust Co.* v. *Merchantville, 74 N. J. Eq. 330.*