BROADWAY TRUST COMPANY, a corporation, complainant,

*v.*

THE BOROUGH OF HADDONFIELD, defendant,

[Decided February 7th, 1924.]

1. The making and filing of a map with a block on it marked as "Park" followed by conveyances of lots in reference thereto, operates as a dedication.

2. Evidence examined and *held* that the land described in the bill in this cause was not dedicated to use as a park.

On bill to quiet title. On final hearing.

*Mr. Lewis Starr,* for the complainant.

*Mr. Patrick H. Harding,* for the defendant.

INGERSOLL, V. C.

This is a bill to quiet the title of certain property in the borough of Haddonfield, in the county of Camden, being known and designated as lots Nos. 335, 336, 337, 338, 339, 340, 341, 342, 343 and 344 on a map or plan of the property of the West Haddonfield Land Company, duly filed in the office of the register of deeds of Camden county.

Complainants allege that they are the owners of the said land and are in peaceable possession thereof, and that their title is disputed by the defendants. The defendant's claim is that said lands were, together with other lands, "set off and dedicated to the public as a park by proper words, symbols, marks and designations, on the map or plan above referred to." That said West Haddonfield Land Company made and effected sales of other and adjoining lands to said alleged park area on the representation that said park was in truth

and good faith what said land company intended said dedication to be. That the dedication was accepted by the borough of Haddonfield by resolution on or about January 25th, 1922. And, further, that the complainant is in laches by reason of its delay in filing its bill.

In 1893 the Haddonfield Land Company was the owner in fee of the lands and premises delineated on the map above referred to, which map was marked "Plan of the property of the West Haddonfield Land Company, filed August 18th, 1893, by Jacob Sickler, Register," with a memorandum thereon "removed from bottom slide 43." This map was admitted by counsel as having "come from the files of the register of deeds, and that it had been filed as of the date thereon," and was admitted in evidence.

A copy of so much of that map as is pertinent to the issue in this case and of the case of *Blank* v. *Borough of Haddonfield,* heard by consent at the same time is annexed hereto.

In 1893 the Haddonfield Land Company, the defendant, was the owner in fee of the land and premises delineated on the map. The complainant is the owner of the lots mentioned in the bill of complaint, by virtue of a deed from Cooper B. Hatch, sheriff of the county of Camden, to the Broadway Trust Company, for these lots, recorded July 7th, 1911, in book 358 of deeds, page 332.

The West Haddonfield Land Company made about fifty-six conveyances between the date of the filing of the map and January 1st, 1898, the recital in each of which is "that the land company has caused the land to be laid out into building lots and avenues, and a map thereof to be made called 'Plan of property of W. H. L. Company,' and filed in the office aforesaid." No lots were sold during that period in the part that is marked "Park" and showing the area delineated by the trees and evidenced by the lines that bound the trees, nor upon the rectangular tract upon which Lake Haddon is situate.

Another map was offered in evidence, marked *D-3,* delineating the same land, but with the rectangular portion enclosing "Lake Haddon" and the trees about same desig-

nated in green color, and the lots bounded by West End and Woodland avenues, and the boundary lines of the tract together with lots Nos. 342, 343, 344, 345, 355, 354, 353, 403, 405, 406, 407, 408, 409, 410, 411, 412, 413, also designated in green. .This map was not filed and there is no testimony that any sales were made with reference to it, and its only connection with the company is the statement of Mr. Dobbs, who said it was issued by the land company, but who on cross-examination said, "Well, I do not know who else would prepare maps of that tract but the company. I don't recollect when it was issued or who issued it, but I take it for granted nobody else would do it."

It was testified that the map originally filed, was filed on August 18th, 1893, without authority by the surveyor who prepared it, and that on February 1st, 1894, a resolution was passed by the directors of the company as follows: "On motion it was ordered that the secretary endeavor to obtain authority from all lot purchasers to eliminate the words "park" and "lake" from the map, also obtain consent to a change in the course of Redman avenue—if successful in obtaining the necessary consents the secretary be authorized to destroy all old maps and obtain new ones."

That quit-claim "deeds" or waivers were obtained from all excepting two of those who had purchased land, and that a new map was filed on December 20th, 1897. This map was offered in evidence and marked *C-5.*

This new map was very similar to the old, excepting no "lake" or "park" is shown, and no delineation of trees in any part. The part marked lake on the old map was divided into lots, as was Estaugh avenue, and the extension of same was, although divided into lots and numbered, marked "Camden Horse R. R. Co. Proposed Trolley."

It was admitted as a fact in the case that until 1922 all of the land in the area which is claimed to be marked "Park," and in the "Lake," was assessed by the municipality and the taxes were paid until that year, and that neither the borough of Haddonfield nor Haddon township, in which the land was located when the map was put on record, have made

any use of the area marked "Park" until after the ordinance was adopted.

That the borough owns and acquired from the West Haddonfield Land Company, lots 303 and 304 on the map, and that a pumping station in connection with the sewer plant of the borough was located on these two lots, and that the borough laid sewer pipe to connect with the pumping station on those two lots in a tract of land, which would be an extension of Estaugh avenue, through the part that is marked "Lake Haddon."

That the borough or the municipal authorities have never taken possession or exercised any rights of ownership or possession over the area marked "Lake," except the construction of the sewer pipe in and along what would be the extension of Estaugh avenue.

The entire tract was known as the Redmond farm, and had been cultivated, except that portion upon which there was a grove of trees known as Redmond woods, located about as indicated by the trees on the westerly side of the tract. Through the farm about the location marked "Lake" was a natural drainage ditch, which drained the land evidently into a branch of Newton creek. Where the "Lake" is indicated was a low place, in dry weather without any water and in wet weather, with water covering considerable area but of very few inches depth, which also was not cultivated.

About the time of the filing of the map, the trees along the avenues were cut down, the stumps removed, but the streets were not graded. The remainder of the trees in the area marked "Park" were cut down and sold by the land company. This was a considerable growth of "big trees and they were sold for telegraph poles."

The borough filled in the land designated as "Lake" and graded and graveled Estaugh street through the "Lake" and as before stated, placed a line of sewerage pipes in said street.

The question for determination is, Was the land accepted by the borough as a "park," dedicated as such by the company? It will be noticed that on the original map filed the

entire land marked "Park" is plotted into building lots of the same size and character as in other parts of the tract. That the word "Park" is placed thereon as follows: The letter "P" is almost entirely on lot 425, upon which no tree is delineated; the letter "A" is at the intersection of Wood· land and Peyton avenues; the letter "R" on lots 346 and 347, and the letter "K" on lots 261 and 260. "P" and "A" are within the limits of the green shaded tract on map marked *Exhibit D-3,* and within the territory included in the resolution of acceptance of the borough. The letters "R" and "K" are without these limits, and the latter approximately by examination and measurement by scale, of the map in evidence, three hundred and fifty feet or more from the nearest point of the claimed dedication.

It is manifest that it has never been considered or understood in this case that the dedication, if any, was to cover all the land upon which appeared the letters composing the word "Park."

The contention is that the ground delineated in green on *Exhibit D-3,* and described in the borough resolution, is all that may be included in the dedication.

In so far as the original map is concerned therefore—do the markings representing trees on a map with the word "Park," partly within and partly without the area alleged to be dedicated—all the tract being divided into streets and lots duly numbered, dedicate the lots within the general boundaries of lots upon which trees are located.

The easterly boundary arbitrarily included lot No. 403, upon which no tree is delineated and which, as included, makes an irregular boundary line in that block.

If this map is correct, nature has evidenced a remarkable regularity in that every tree is situated upon the end of a lot and with more remarkable symmetry, alternating from the front to the rear of the lots. It will also be noted that the fact that a tree is delineated on lot 309 is not considered sufficient to include it within the dedication.

It is well settled that the making and filing of a map, with a block upon it marked as "Park," followed by con-

veyances of lots in reference thereto operates as a dedication. *Price* v. *Inhabitants of Plainfield, 40 N. J. Law 608.*

In *Weger* v. *Delran, 61 N. J. Law 224* (on *p. 226*), the facts stated were: "That about 1853 Bechtold had purchased a tract of land which included the *locus in quo;* that he had made a map of it, laying it off by streets and lots \* \* \*; that all the blocks except the *locus in quo* were divided into numbered lots; that it was distinguished from the other blocks by a different coloring, by the delineation of trees and of paths, and by a rough representation of a fountain in the centre; that a copy of the map had been attached by wafers to a deed book in the county clerk's office, and that he had declared to many persons his intent to dedicate the *locus in quo* as a place for recreation and pleasure to the public." Held, there was evidence before the trial judge in a trial without a jury, in respect to dedication.

In *Trustees of M. E. Church* v. *Hoboken, 33 N. J. Law 1,* on the map the lands were all laid out in streets and lots twenty-five feet frontage, except the four squares, which were colored green, and the plot of ground in question was marked on the map "Square."

The court said: "The question of dedication, being a question of intention, is to a great extent a question of fact for the jury. The case was fairly presented to the jury, and I see no reason for disturbing their verdict."

In *Bayonne* v. *Ford, 43 N. J. Law 292,* "Roswell Graves was the owner of a tract of land containing about two hundred acres \* \* \* and which parcel included the premises then in question. He had this whole tract marked out on a map into lots and plots, streets and avenues, and the premises in dispute were indicated on this map thus: 'Annette Park, now belonging to R. Graves.' This park stood by itself, being separated on all sides from the building lots by laid out streets. Graves had also repeatedly declared that he had dedicated the park to the public. A direction to find a verdict for the plaintiff was sustained."

In *Bozarth* v. *Egg Harbor City, 89 N. J. Eq. 26,* in determining the question of dedication the court said: "All

blocks on that map, except these three blocks and the two parks already referred to [the land in question], are subdivided into lots."

As to the land in controversy in the bill of the Broadway Trust Company, complainant, I am convinced that the land company did not dedicate the lands of the complainant or the other land called the "Park" by the filing of the map of 1893 or otherwise.

Had, on this map, the land in controversy not have been divided into lots, it might perhaps have been held that the part not divided into lots and having trees delineated thereon, to have been dedicated even if the word "Park" extended beyond such boundaries, and likewise, if on this map, the land in question had been colored differently from the remainder of the map (as it was on the unfiled map), even if the word "Park" extended beyond the boundaries.

For the purpose of analysis, let us take up the different points upon which dedication has been declared:

*First*—There is no specific lot or tracts of land delineated as "Park," or by any other apt word, as in *Price* v. *Inhabitants of Plainfield, supra.*

*Second*—There is no specific lot or tract not divided into lots, as in *Weger* v. *Delran, supra;* or *Bozarth* v. *Egg Harbor City, supra.*

*Third*—There is no specific boundaries of the land upon which trees are delineated, as in *Weger* v. *Delran, supra.*

*Fourth*—There is no specific tract differing in color from the remainder of the map, as in *M. E. Church* v. *Hoboken, supra.*

*Fifth*—There was no declaration of dedication, as in *Weger* v. *Delran, supra.*

I find, therefore, that there was no dedication of the land in question, and the complainant is entitled to a decree.