**GEORGE W. ARMBRUSTER, JR., Inc., et al.**
**v. CITY OF WILDWOOD.**

District Court, D. New Jersey.
May 29, 1930.

Bourgeois & Coulomb, of Atlantic City, N. J., for plaintiffs.

Cole & Cole, of Atlantic City, N. J., for defendant.

AVIS, District Judge.

The bill filed in this case asserts that George W. Armbruster, Jr., Inc., one of the plaintiffs, is the owner in fee of four certain tracts of land located in the city of Wildwood, county of Cape May, and state of New Jersey, lying easterly or oceanward of an avenue, known as Beach avenue, which avenue was originally laid out parallel, or practically parallel, with the high-water line of the Atlantic Ocean, and that the plaintiff Shore Resort Company is the owner of another tract of land similarly located.

The bill further alleges that the municipality, city of Wildwood, the defendant, has illegally constructed, or caused to be constructed, a certain boardwalk 40 feet in width upon a portion of the bed of Beach avenue, and extending from Cedar avenue on the north to Montgomery avenue on the south, a distance of between 2,300 and 2,400 feet, which prevents the plaintiffs from having a right of ingress to and egress from their lands on the oceanward side of the boardwalk of the city of Wildwood, and that the erection of the boardwalk on an alleged public highway is a purpresture, or nuisance, and that the plaintiffs are specially damaged thereby, not only because of the fact that it interferes with their ingress to and egress from their properties, but that they have a right to have Beach avenue, within the bounds hereinbefore referred to, opened for use as a public highway, and that its erection interferes with their right to light, air, and view.

The prayers for relief contained in the bill are:

(1) For an injunction commanding and enjoining the city of Wildwood to desist and refrain from continuing the existence of the boardwalk from Cedar avenue to Montgomery avenue.

(2) For a mandatory injunction to compel the city of Wildwood to remove the boardwalk between Cedar and Montgomery avenues.

(3) For an injunction commanding and enjoining the city of Wildwood from preventing and obstructing vehicular traffic over Beach avenue and the avenues running at right angles thereto by reason of the existence of the boardwalk.

(4) For an injunction commanding and enjoining the city of Wildwood from pre-

venting and obstructing ingress to and egress from the lands of the plaintiffs by the presence of the boardwalk.

The facts appear to be that in 1881 or 1882 Holly Beach City Improvement Company, the then owner of a tract of land which included the lands in question in this suit, laid it out into streets and building lots, and caused a map of the same to be prepared and filed in the Cape May county clerk's office. On this map, Beach avenue is shown as being 70 feet in width, continuing uninterruptedly along the line of the lands now owned by the plaintiffs, and practically parallel with high-water mark of the Atlantic Ocean. At the time this map was prepared and filed, there was a tract of land to the easterly or oceanwardly of the easterly line of Beach avenue, which was about 250 feet in width between the easterly line of Beach avenue and high-water mark of the Atlantic Ocean. After the land was laid out and the map prepared, several residences or cottages were erected on the westerly side of, and facing, Beach avenue. It appears by the evidence that at the time the map was filed, Beach avenue was actually staked out, but it was never in any way improved.

Subsequently, about the year 1885, by reason of ocean tides a portion of the land oceanwardly of Beach avenue was encroached upon by the sea, and eventually the southerly portion of Beach avenue was washed away, and also some portion of Beach avenue bounding upon the property now owned by the plaintiffs. Later, as I recall the testimony, about the year 1917, the United States government erected a jetty at Cold Spring Inlet for the purpose of constructing a harbor, about three miles along the coast southerly from the city of Wildwood, and, according to the evidence, by reason of this erection the lands owned by the plaintiffs, and some portion of the ocean-front theretofore laid out and known as Beach avenue, filled with sand, became high land, and in the year 1929, it would appear from the testimony of the engineers, the high-water mark at Cedar avenue was about 175 feet easterly of Beach avenue, and at Montgomery avenue the high-water mark covered a portion of Beach avenue; that at Baker avenue, the first avenue northerly of Montgomery avenue, the high-water mark was 10 feet or more easterly of the easterly line of Beach avenue, and that the line of high water between these two extreme points was practically straight and uniform.

The boardwalk between Cedar and Montgomery avenues was constructed by the city of Wildwood in 1919. This was a wooden structure supported on piles; according to the testimony, 6 or 7 feet in the clear above the grade of the streets on the westerly or land side of Beach avenue. Later, in the early part of the year 1927, a concrete extension of the boardwalk was built southerly from Montgomery avenue to Cresse avenue. There is no contention in this suit, however, with relation to any obstruction by the portion of the boardwalk so built in 1927.

In the pleadings and brief of counsel for the defendant, the court's jurisdiction is challenged upon two grounds:

1. It is alleged that the bill is predicated upon the assumption of a legal duty on the part of the defendant to remove the public boardwalk because it is a purpresture upon Beach avenue, and that if this is true there is an adequate remedy at law by mandamus, and this court is without jurisdiction. It is evident that federal courts have no jurisdiction in original cases of mandamus.

"The circuit courts of the United States have no jurisdiction in original cases of mandamus, and have only power to issue such writs in aid of their jurisdiction in cases already pending, wherein jurisdiction has been acquired by other means and by other process." Covington & Cincinnati Bridge Co. v. Hager, 203 U. S. 109, 27 S. Ct. 24, 51 L. Ed. 111.

This power can be exercised only in aid of its appellate jurisdiction, except mandamus may be issued by the Supreme Court "to any courts appointed, or persons holding office, under the authority of the United States," In re Green, 141 U. S. 325, 12 S. Ct. 11, 35 L. Ed. 765; or in matters relating to interstate commerce and other cases strictly federal in their character, when it would appear that the federal courts have such jurisdiction, Stephens v. Ohio State Telephone Co. (D. C. N. D. Ohio) 240 F. 759.

The fact that mandamus proceedings cannot be prosecuted in a federal court, does not, and cannot, take away from this court its jurisdiction to give relief, if it is proper to do so under the equity jurisdiction of the court. The case is properly here by reason of diversity of citizenship of the parties, and the amount in dispute. This court will therefore take jurisdiction of the case so far as the objection concerns or relates to the claim that the suit is cognizable in a court of law, and that the remedy is by mandamus.

"The adequacy or inadequacy of a remedy at law for the protection of the rights of one

entitled upon any ground to invoke the powers of a federal court is not to be conclusively determined by the statutes of the particular state in which suit may be brought. One who is entitled to sue in the federal circuit court may invoke its jurisdiction in equity whenever the established principles and rules of equity permit such a suit in that court; and he cannot be deprived of that right by reason of his being allowed to sue at law in a state court on the same cause of action." Smyth v. Ames, 169 U. S. 466, 516, 18 S. Ct. 418, 422, 42 L. Ed. 819.

■ Relief, if necessary, may be by mandatory injunction. Love v. Atchison, T. & S. F. Ry. Co. (C. C. A. 8), 185 F. 321; Longwood Valley Railroad Co. v. Baker, 27 N. J. Eq. 167.

2. The defendant challenges the jurisdiction of this court, claiming that a suit between the same parties and involving the same issues is now pending in the Court of Chancery of the state of New Jersey, which suit, it is alleged, was brought prior to the commencement of this suit in this court. The defendant claims and alleges that the state court first obtained jurisdiction.

The facts with relation to this contention are that the bill in chancery was filed by the city of Wildwood on September 3, 1929, against the complainants in this suit, praying for an injunction to restrain the defendants there, against the removal or destruction of any part or portion of the boardwalk; and that it be decreed that the complainant in that suit has the right, both at law and in equity, to maintain the boardwalk over Beach avenue, and further to restrain the defendants from taking any proceedings at law or in equity to effect the removal of the boardwalk. Upon the filing of this bill, a rule to show cause issued out of the Court of Chancery, returnable on September 17, 1929, with relation to preliminary restraint. No subpœna was issued or served on this bill until after September 17, 1929. The bill of complaint was filed in this court on September 4, 1929, and subpœna was both issued and served on September 4, 1929. The question then is, Which court first obtained jurisdiction?

In Lehigh Valley R. Co. v. Andrus, 91 N. J. Eq. 225, 109 A. 746, Vice Chancellor Backes said:

"Moreover, the defendant's action was begun first. The bill here was filed before his suit was started, but process was not served, and jurisdiction of the subject-matter and the parties was not acquired until

long afterwards—approximately three months. The defendant is a nonresident. The filing of a bill and the issuing of process, not served, in an action in personam against a nonresident, do not commence a suit in equity. Service is essential. Commencement is marked by the issuance of subpœna after bill filed, provided the subpœna is instrumental, directly or indirectly, in bringing the defendant within the jurisdiction of the court. See Crowell v. Botsford, 16 N. J. Eq. 458; Haughwout v. Murphy, 22 N. J. Eq. 531; Hermann v. Mexican Petroleum Corp., 85 N. J. Eq. 367, 96 A. 492; Haupt Co. v. Bd. of Education of Edgewater, 87 N. J. Eq. 362, 100 A. 337; Delaware River Q. & C. Co. v. Mercer Freeholders, 88 N. J. Eq. 506, 103 A. 18. Being prior in point of time, the New York suit has preference." 91 N. J. Eq. 225, 109 A. 746, page 748. See M. Haupt Co. v. Board of Education of Edgewater, 87 N. J. Eq. 362, 100 A. 337; Malba Terrace Corp. v. Portaupeck Properties, Inc., 105 N. J. Eq. 453, 148 A. 206.

This doctrine in our state courts, of the necessity of issuing process and making an effort to serve same, appears to be upheld in the federal court in the following case: United States v. American Lumber Co. (C. C. N. D. Cal.) 80 F. 309; Id. (C. C. A. 9), 85 F. 827.

■ My conclusion is that the case commenced in this court was brought prior to the commencement of the suit in the Court of Chancery of the state of New Jersey, and that this court first acquired jurisdiction, and that plaintiffs have the right to prosecute their suit to a final determination. Sharon v. Terry (C. C. N. D. Cal.), 36 F. 337, 1 L. R. A. 572.

■ The issuing of a rule to show cause cannot be considered as the commencement of an action.

"The authorities upon this point are collected in United States v. American Lumber Co. (C. C.) 80 F. 309, and 85 F. 827, 29 C. C. A. 431. The presentation of a bill to the chancellor and the granting thereon of an order to show cause why an injunction should not issue, with an ad interim stay, brings the litigation before him for a limited purpose, and is not the institution of the suit. It is merely before him on a motion to consider the question whether an injunction should issue when the suit should be commenced, to which the defendant enters but a special appearance for the purpose of combating the application—a privilege accorded him, which has grown into popular practice within re-

cent years." Hermann v. Mexican Petroleum Corp., 85 N. J. Eq. 367, 371, 96 A. 492, 493.

This brings us to the material facts in the case. It is quite apparent, and is not seriously disputed by counsel for the defendant, that Beach avenue was a dedicated street as laid out on the map by Holly Beach City Improvement Company, and is, therefore, a public highway of the city of Wildwood, and was such a public highway at the time of the construction of the boardwalk thereon.

In the case of Ridgefield Park v. N. Y., S. & W. R. R. Co. (Err. & App.) 85 N. J. Law, 278, page 281, 89 A. 773, 775, Parker, Judge, said:

"We conceive that few propositions of law are better settled in this state than that, when the owner of a tract of land maps it into blocks, lots, and streets for purposes of sale, files his map in a public record office, and sells lots by reference to such map, he thereby dedicates the streets shown thereon to the public so far as his ownership then extends. Pope v. Union, 18 N. J. Eq. [3 C. E. Gr.] 282; Trustees v. Hoboken, 33 N. J. Law [4 Vroom] 13, 97 Am. Dec. 696; Attorney General v. M. & E. R. R. Co., 19 N. J. Eq. [4 C. E. Gr.] 386; Clark v. Elizabeth, 40 N. J. Law [11 Vroom] 172; McAndrews & Forbes Co. v. Camden, 78 N. J. Eq. [8 Buch.] 244, 78 A. 232; Camden v. McAndrews & Forbes Co., 85 N. J. Law, p. 260, 88 A. 1034. And if a street be shown on the map as extending to the water, the dedication will carry it to any new water line created by filling, etc. (Hoboken Co. v. Hoboken, 36 N. J. Law [7 Vroom] 540; McAndrews & Forbes Co., v. Camden, supra), and, when a street has once been dedicated, the right of the public to appropriate it to their use at any time when their wants or convenience require it, cannot be defeated by any subsequent act of the dedicator, or of those claiming under him (McAndrews & Forbes Co. v. Camden, supra; Freeholders v. Sharpless, 83 N. J. Law, 54 Vroom, 443, 85 A. 222)." See, also, Jersey City v. Dummer, 20 N. J. Law, 86, 40 Am. Dec. 213; Broadway Trust Co. v. Haddonfield, 95 N. J. Eq. 521, 123 A. 534.

In Kruger v. Constable (C. C. S. D. N. Y.) 116 F. 722, 725, it was said: "According to the decisions of the courts of New Jersey, as well as the adjudications elsewhere, if the owner of a tract of land plots it in lots and streets by a map filed in a public repository, and sells lots on the map by a reference thereto, or by a map publicly ex-

hibited, he thereby dedicates the streets on the map to the public. Although the acceptance by the proper public authority is also necessary in order to make the public liable for maintaining the streets in good order, the dedication may be accepted by the proper authorities at any future time, and the owner is estopped to deny the dedication, private rights having meantime intervened"—citing cases. See, also, Elliot v. Atlantic City (C. C.) 149 F. 849, 853.

The fact that the land of the plaintiffs and a portion of Beach avenue was at one time encroached upon and eaten away by the tides of the Atlantic Ocean, does not in any way affect the dedication of Beach avenue or the title of the plaintiffs to the lands now owned by them, in view of the fact that at this time the location has refilled by deposits from the ocean.

Judge Cross of this court, in the case of Elliot v. Atlantic City, supra, said:

"Plaintiffs' counsel, however, insist that the defendant has lost its right to set up this dedication, because the land embraced within the lines of Maine avenue as dedicated, whatever its width, was subsequently to the dedication encroached upon and eaten away by tidal water, and that the land subsequently formed by accretion over the site of Maine avenue is discharged from the easement. The rule as laid down in Am. & Eng. Ency. of Law (2d Ed.) vol. 1, p. 469, title 'Accretion,' is as follows:

" 'The general rule is that to the owner of the shore belong these imperceptible and insensible additions to his lands, which when once acquired become in all respects a part of the original tract; the title thereto being held subject to the same incumbrance and with the benefit of the same rights as is the land to which accretion is made.'

"The above quotation has to do with the question of property in lands formed by accretion, but later in the same volume, on page 474, in dealing with the title to land which has reappeared after submergence, the following statement is made:

" 'It seems that, although land be submerged by the sea, yet if it eventually reappears and remains capable of identification, the title thereto revests in the original owner.' "

It appears quite conclusively, although the city of Wildwood never by formal resolution accepted Beach avenue as a public highway, that it appropriated the avenue for public purposes. Mr. Rice testified that the

boardwalk was constructed under instructions from the city, on the westerly side of Beach avenue; that it also constructed a sanitary sewer under the surface of the ground on Beach avenue from Schellenger avenue to Spencer avenue; that it constructed a surface drainage sewer, under the surface of Beach avenue, from Youngs avenue to Roberts avenue; that it caused to be fastened under the boardwalk so erected on Beach avenue, electric light wires from Cedar to Cresse avenues, and that it also erected and maintained a water pipe fastened under the boardwalk, which was used for city water purposes.

All of these acts indicate an appropriation of the avenue for public purposes, and, under the decisions in the state of New Jersey, undoubtedly show an acceptance of Beach avenue as a public highway, and placed upon the city the responsibility of using and caring for the same, as other streets of the city.

"Except in cases where a municipality may not have the charter powers to accept a dedication, an acceptance by a municipality by its duly authorized officers may be express by deed or other instrument in writing or by some matter of record; but unless otherwise provided by statute or ordinance no particular form of acceptance by a municipality is necessary. The acceptance may be implied from some act or acts showing that the municipality has assumed control and possession of the property dedicated, provided the act or acts relied on are unequivocal." 18 Corpus Juris, pp. 81, 82.

In the case of Arnold v. City of Orange, 73 N. J. Eq. 280, 66 A. 1052, the court held: "The construction of a public sewer by proper municipal authority at the expense of the municipality in a dedicated street connected with the municipality's general system of sewers was an acceptance of the dedication of the street through which the sewer was constructed." Syllabus 3.

In the case of City of Atlantic City v. Associated Realties Corp. (Err. & App.), 73 N. J. Eq. 721, 70 A. 345, 17 Ann. Cas. 743, the court held: "An acceptance of property dedicated to the public use may be shown by an instrument in writing executed by the proper authorities on behalf of the public, or by the use and improvement of the property dedicated, by the duly authorized authorities." Syllabus 3.

In the case of Schmidt v. Spaeth (Err. & App.) 86 N. J. Law, 179, 90 A. 1002, the court held: "The governing body of the city of C. having authority, and control over the highways of the city, ordered the removal of a fence which had been built across a court, or alley, which had theretofore been dedicated to public use. Held, that such action by the governing body constituted an acceptance of the dedication." Syllabus 3.

If a municipality in any action at law or in equity asserts a right in a dedicated highway, it would appear that such assertion amounts to an acceptance of the dedicated street, and it appears by the proofs that the city of Wildwood has on more than one occasion, as plaintiff or defendant, prosecuted or defended upon allegations of Beach avenue being a public highway. See Hohokus v. Erie R. R., 65 N. J. Law, 355, 362, 47 A. 566; Atlantic City v. Groff, 64 N. J. Law, 527, 528, 45 A. 916.

I am satisfied that Beach avenue was a legally dedicated street; that it was duly and legally accepted by the municipal authority, and is, therefore, a public highway of the state of New Jersey, and was such public highway at the time of the commencement of this suit.

The erection of the boardwalk in this public highway was without authority of law, and plaintiffs claim that it is a purpresture, or public nuisance, but that their right to a decree is based upon the special damage or injury which the illegal erection of the boardwalk has caused to their property. A purpresture, strictly speaking, is an erection, by a private individual, of an obstruction in a public highway, which may be removed upon complaint of the public authority having charge and control thereof, for the benefit of the public at large. Black's Law Dictionary, 2d Ed.

"A form of public nuisance of which cognizance has been taken by the courts of equity in England and in this country is called 'purpresture,' which is defined to be 'an encroachment upon lands, or rights and easements incident thereto, belonging to the public, and to which the public have a right of access or of enjoyment, and encroachment upon navigable streams.' The remedy for a purpresture, simply, is by information in equity at the suit of the attorney general or other proper officer.' Wood, Nuis. pp. 107, 117; People v. Vanderbilt, 28 N. Y. 396 [84 Am. Dec. 351]; New Orleans v. U. S., 10 Pet. 662 [9 L. Ed. 573]; Attorney General v. Forbes, 2 Mylne & C. 123." United States v. Debs (D. C. N. D. Ill.) 64 F. 724, 740.

I am convinced that the obstruction and erections in Beach avenue, if improperly and illegally there, are in the nature of a nuisance rather than a purpresture.

Defendant claims that, even if Beach avenue is a public highway, and the erections therein are illegal and unlawful, plaintiffs cannot complain, and are not entitled to relief for two reasons:

(1) Plaintiffs are estopped because their predecessors in title had knowledge of what the city was doing at the time, and made no objection to the erection of the boardwalk; permitted property owners on the westerly side to construct substantial buildings adjoining the boardwalk; and by reason thereof have waived any rights which they might have had to relief in this cause.

The evidence relied upon to sustain this contention is the fact of the actual erection of the boardwalk, which is claimed to have been constructive notice, and the testimony of William S. Darnell, a director of the Beach Realty Company, who testified that, incidentally, he knew of the erection and presumed that others of the board of directors also had that knowledge.

No actual notice was given to the company or its board, and apparently the defendant at the time of the erection of the boardwalk from Cedar to Montgomery avenues had no concern as to the rights of the owners of land eastwardly of the boardwalk.

The contention is that the directors of the Beach Realty Company must have known of the erection, and, by their silence and failure to take some affirmative corporate action, the successors in title of the Beach Realty Company are now estopped from complaining, regardless of damage sustained. There is no evidence indicating that the Beach Realty Company in any way, affirmatively, misled the city of Wildwood, and as a matter of fact during this period and until a comparatively recent date, the owners of plaintiffs' land and the defendant were almost continually litigating with relation to the title to the land easterly of Beach avenue.

An equitable estoppel is based upon some affirmative action, by word or conduct, of the person against whom it is invoked, and some action of the other party, relying upon the representations made. Central R. R. Co. v. MacCartney, 68 N. J. Law, 165, 175, 52 A. 575. I am unable to find anything in this case which would justify its dismissal by reason of the claim of equitable estoppel based upon the failure of plaintiffs to take earlier legal action.

(2) Defendant claims that plaintiffs are precluded from relief because of a certain consent agreement which the Beach Realty Company executed, consenting to the erection of the boardwalk southerly from Montgomery avenue to Cresse avenue. This agreement, among other things, provides as follows:

"That the Beach Realty Company for in consideration of the premises, and some other good and sufficient causes thereunto moving, and as well as for and in consideration of the sum of One Dollar, the receipt of which is hereby acknowledged have and do hereby consent and agree to permit the City of Wildwood, in the County of Cape May, to build, construct, erect and maintain a boardwalk over the bed of Beach Avenue from Montgomery Avenue, at the southwesterly end of the present boardwalk, and attaching thereto, to the southwesterly side of Cresse Avenue, or so much thereof as shall be required therefor, subject however, and upon the following conditions and reservations that the Beach Realty Company and its respective grantees, shall and may at all times have and exercise the uninterrupted right to attach and have access to said Boardwalk from the southeasterly side thereof extending from Cedar Avenue to Cresse Avenue and of ingress and egress thereto.

"And the said Beach Realty Company hereby agrees and consents that the said City of Wildwood, in the County of Cape May may use, occupy and enjoy the land and premises on and over said Beach Avenue, extending its entire length, or so much thereof as it may require, for boardwalk purposes, to be used only as a boardwalk, subject only to the conditions and reservations herein above expressed."

The resolution of council of defendant authorizing this agreement, after reciting the desire of the city to erect the boardwalk on Beach avenue between Montgomery and Cresse avenues, reads as follows:

"And be it further resolved, that in consideration for the granting to the City of such permission were required, the said owners, and their respective grantees shall and may at all times, have the full and uninterrupted right to attach and have access to said boardwalk, when constructed;

"And further resolved that the Mayor be and he is hereby further authorized, em-

powered and directed to accept and acknowledge, in behalf of the said City of Wildwood, in the County of Cape May, such consents and permissions, subject to the conditions and rights above referred to, of the owners of lands abutting on Beach Avenue, if necessary, for its entire length."

The resolution of council accepting the agreement of the Beach Realty Company, after reciting the receipt of the signed agreement, then sets forth the following:

"Resolved that the City of Wildwood, in the County of Cape May do hereby accept such consent and do hereby authorize and direct the proper written acknowledgment of said acceptance to the said Beach Realty Company;

"Further resolved that the Mayor and City Clerk be and they hereby are authorized and directed to execute and deliver such written acknowledgment and acceptance to be signed by said Mayor, attested by the City Clerk, with a copy of this resolution thereto attached."

The adoption of the resolution authorizing the agreement, the execution and delivery of the agreement, and the acceptance thereof by resolution of the council, in my opinion, made a completed agreement, and the minds of the parties fully met upon what appears to me to be a complete understanding. However, I am convinced that the agreement does not preclude the plaintiffs from having relief in this action, for three reasons:

█ (1) It is apparent that the city never intended to perform, and never actually, in good faith, performed its part under the terms of the agreement. After the agreement was entered into, the city adopted and continued a course of conduct indicating its attitude by refusing to grant to plaintiffs, or their predecessors in title, a permit to erect a building on their lands, and to connect the same with the boardwalk; and after obtaining a lease of some portion of the land of plaintiffs, or Beach Realty Company, upon which it had erected some buildings for city purposes, and occupying said land for a year under the terms of the lease, refused to renew same, and continued in possession under a claim of right, alleging in ejectment proceedings that the land had been dedicated to public use. This attitude of defendant resulted in the necessity for suits in chancery and at law, in all of which the plaintiffs, or their predecessors in title, were successful.

█ (2) The agreement was ultra vires as to the defendant, and was void as against public policy.

The effect of the agreement was to authorize the plaintiffs' predecessor in title to commit an unlawful act; i. e., to use a portion of a public highway for private purposes; and the consent to the erection and maintenance of the boardwalk was obtained by defendant for the purpose of appropriating a public highway to a use not contemplated in its dedication and not authorized by law.

I am satisfied that the city had no right to enter into such a contract.

"A contract which contravenes the provisions or policy of a public law, is void." Cannon v. Cannon, 26 N. J. Eq. 316. This being the fact, the court will not give effect to its provisions. Hope v. Linden, 58 N. J. Law, 627, 34 A. 1070, 55 Am. St. Rep. 614.

█ (3) There was an absolute failure of consideration. This is so because the consideration, which the Beach Realty Company was to receive, was the right to connect any buildings which it might erect on its land to the boardwalk, over 30 feet of Beach avenue, a public highway. The city of Wildwood was without authority to make such a grant, and the Beach Realty Company could not exercise the privilege attempted to be given by the contract.

If the contract had been a valid one, there would still be a question as to whether or not the right of plaintiffs of ingress to and egress from its land, over public highways, was to be entirely extinguished by the construction of the boardwalk.

█ I am satisfied that the erection of the boardwalk in a public highway, constituted a public nuisance, and that its maintenance there is a continuing public nuisance.

█ The remedy is by indictment or information, in so far as it affects all of the people, who have a right to have said highway open, and who are deprived of their use of the highway, or who are prevented from enjoying an unobstructed right of light, air, and view. Attorney General v. Heishon, 18 N. J. Eq. 410.

█ The plaintiffs can obtain relief, only, if there is a showing that they have suffered special damage, or injury, different, and distinguishable from their injury as members of the public at large. Fessler v. Town of Union, 67 N. J. Eq. 14, 56 A. 272.

"The court of equity also, pursuing the analogy of the law, that a party may maintain a private action for special damage, even in case of a public nuisance, will now take jurisdiction in case of a public nuisance, at the instance of a private person; where he is in imminent danger of suffering a special injury, for which, under the circumstances of the case, the law would not afford an adequate remedy." Georgetown v. Alexandria Canal Co., 37 U. S. (12 Pet.) 91, 98, 9 L. Ed. 1012.

It is apparent that the plaintiffs, under this principle of equity, have not been specially injured, except as the boardwalk obstructs their right of ingress to and egress from their lands which are located oceanward of Beach avenue. It appears by the proofs that they have no access to their property, except by crossing the line of the boardwalk which is not sufficiently high to permit vehicles to pass from the end of right angle streets, across Beach avenue to their lands.

In this, I believe, plaintiffs are irreparably injured, and entitled to relief.

"The title and the right of control of the streets for street purposes are in the city. If the streets are obstructed, the city should clear them. Appellee may not take upon itself the vindication of the city's or the public's rights. But to have a free and unobstructed entrance is a property right— an easement appurtenant to the abutting realty. From continuous infractions of that right, appellee is entitled to relief"—citing cases. Donovan v. Pennsylvania Co. (C. C. A. 7), 120 F. 215, 219, 61 L. R. A. 140, affirmed 199 U. S. 279, 26 S. Ct. 91, 50 L. Ed. 192. See, also, American Smelting & Refining Co. v. Godfrey (C. C. A. 8), 158 F. 225, 14 Ann. Cas. 8; Brownlow v. O'Donoghue, 51 App. D. C. 114, 276 F. 636, 22 A. L. R. 939.

A decree will be made authorizing an injunction commanding and enjoining the defendant, city of Wildwood, from preventing and obstructing vehicular traffic across Beach avenue, from the ends of the avenues at right angles thereto; the clearance to be sufficient to permit such vehicular traffic on the present grade of the said right angle streets; such passageways to be of sufficient number to permit ingress and egress to all of the lands of plaintiffs lying eastwardly of Beach avenue.

At this time I am not inclined to grant a mandatory writ, believing that the parties will arrange some method of complying with the opinion herein expressed.

The terms of the decree will be settled on motion, and the question of issuance of mandatory injunction is reserved. If required, however, to enforce the rights of plaintiffs, application for same may be made later.